Peter J. TROIANI, Individually

v.

**BETHLEHEM STEEL CORPORATION.**

Civ. A. No. 82–0985.

United States District Court,
E.D. Pennsylvania.

Aug. 25, 1983.

Dale J. Belock, U.S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Donna Kahn, Harris & Kahn, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

CAHN, District Judge.

Plaintiff, Peter J. Troiani, seeks to obtain pension credit for the five and one-half year period from 1941, when he took a leave from the employ of the Bethlehem Steel Corporation, defendant, to serve in the military, to 1946, when he was honorably discharged and made timely application for reemployment. He also seeks to obtain loss of earnings, benefits, and other emoluments resulting from the failure of the defendant to reinstate him in 1946 from that time until the date in 1956 that he secured an-

other position with the defendant corporation. Jurisdiction is based on the provisions of the Vietnam Era Veteran's Readjustment Assistance Act of 1974, 38 U.S.C. § 2021 *et seq.* (hereinafter referred to as the "Act"), formerly the Military Selective Service Act of 1967, as amended, 50 U.S.C. App. § 459. The action is before me on defendant's motions to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure and, in the alternative, for summary judgment under Rule 56. The facts in this case are essentially undisputed. Where the facts are not completely clear they have been stated in a manner most favorable to the plaintiff.

## STATEMENT OF FACTS

1. Plaintiff was hired by Bethlehem Steel on September 23, 1939, as a chainman in the Saucon Mills and Yards Department.

2. He was then assigned to Forge Specialty Machining Department on January 15, 1940, which became his unit service date within the Forge Specialty Machining Department under the collective bargaining agreement then in effect at Bethlehem Steel Corporation's Bethlehem plant.

3. Mr. Troiani left the employ of defendant on September 19, 1941, to enter the military. At that time, his position was floorhelper, a represented hourly paid position in the steel plant.

4. Plaintiff served in the United States Army from October 17, 1941, until February 8, 1946, when he was honorably discharged.

5. On May 8, 1946, Mr. Troiani presented himself at the Employment Office and advised that he had been discharged from the military on February 8, 1946, and was seeking reinstatement to his former position in the Bethlehem plant. He advised the Employment Office that he had been disabled as a result of his military service. Company doctors examined him and determined he was not physically capable of performing the job of laborer in the Forge Specialty Machining Shop which was the job that was available to him based on his seniority, including credit for his military service.

6. On April 24, 1947, Mr. Troiani again appeared in person at the Employment Office requesting work. He was advised there was no work available. Plaintiff was not physically able to perform the duties of his previous position either in 1946 or in 1947 when he applied for employment.

7. In 1946 and again in 1947, the plant physician and the plant medical director confirmed the medical restrictions on plaintiff's reemployment.

8. In 1949, Mr. Troiani enrolled in the Bethlehem Business College and completed the course of study there. At that time, he did not advise defendant of his additional education, his graduation or his newly acquired skills. He did not seek reemployment with Bethlehem Steel at that time.

9. On February 1, 1956, Mr. Troiani applied for employment with Bethlehem Steel, advising it at this time of his newly acquired skills. He was rehired on that date as a junior buyer in the Purchasing Department, a non-represented, non-exempt salaried position in the Home Office. He was continuously employed by Bethlehem Steel from that time until his retirement on January 31, 1982.

10. On November 1, 1962, Mr. Troiani signed a company form acknowledging and agreeing that his continuous service for pension and vacation purposes commenced on February 1, 1956.

11. On July 24, 1975, Mr. Troiani requested that the break-in-service in his continuous service be removed. The removal of a break-in-service such as that requested by plaintiff is referred to by Bethlehem Steel as a "bridge" or a "service bridge." This request was submitted by Mr. Troiani through his supervisor, A.W. Connor, in memoranda dated July 24, 1975, and September 12, 1975. By memorandum dated September 16, 1975, the service bridge request was denied by the Manager of Employee Benefits Programs. At that time, no request was made for a review of this

denial, although a review procedure was available under the plan.

12. In March, 1980, plaintiff again requested in writing through his supervisor a service bridge. This request was denied by the Manager of Employee Benefit Programs in a memorandum dated May 27, 1980. Again, no review of the decision was specifically offered or requested.

13. In September, 1980, plaintiff again requested that he be granted a "service bridge," this time through the offices of the United States Department of Labor. In a letter dated October 21, 1980, to the representative of the Department of Labor, the Manager of Personnel again denied this request.

14. On August 25, 1981, plaintiff received a lump sum pension estimate and general lump sum information, which reflected a February 1, 1956, continuous service date. At that time, no objection was made to the utilization of this service date, and no review was requested.

15. Plaintiff retired from Bethlehem Steel on January 31, 1982, and having met the eligibility requirements contained in the plan took his pension as a lump sum payment based on continuous service date of February 1, 1956. The amount of the lump sum was $84,765.50. At that time, plaintiff reserved in writing his request for a service bridge.

16. If five and one-half years were added to his continuous service date, the lump sum would have been $101,731.74, an addition of $16,966.24.

17. Plaintiff filed suit on March 4, 1982.

## DISCUSSION

■ Defendant's initial argument is that the Act is not retroactively applicable to veterans serving prior to the Viet Nam conflict, specifically those serving in World War II. However, defendant cites no case law in support of its proposition. In contrast, several courts have applied the Act to veterans of World War II. *See, e.g., Bunnell v. New England Teamsters,* 655 F.2d 451 (1st Cir.1981), *cert. denied,* 455 U.S. 908,

102 S.Ct. 1253, 71 L.Ed.2d 446 (1982); *Tennyson v. Babcock & Wilcox,* 105 L.R.R.M. 2927 (S.D.Ind.1980); *Miller v. White Engines, Inc.,* 100 L.R.R.M. 2147 (N.D.Ohio 1978). Thus, in light of the liberal construction courts have given to the Act and its predecessor legislation, this threshold argument is rejected.

■ Defendant's next contention is that the action is barred by Pennsylvania's statute of limitations or, alternatively, by the equitable doctrine of laches. Under the Act, state statutes of limitations are not applicable. *See* 38 U.S.C. § 2022. They may, however, provide some guidance by analogy in determining the application of laches. *See, e.g., Gruca v. U.S. Steel Corp.,* 495 F.2d 1252, 1258 (3d Cir.1974).

■ The appropriate approach for determining the application of laches here is to separate the reinstatement-related claims from the pension-based claims. *See, e.g., Tennyson v. Babcock & Wilcox, supra; cf. Armstrong v. Baker,* 394 F.Supp. 1380 (N.D. W.Va.1975). The reinstatement-related claim, dating back some 36 years from the two times that the plaintiff unsuccessfully presented himself for reemployment, falls well beyond the analogous six-year statute of limitations. Based on the circumstances of this case, the essential elements of unreasonable delay and prejudice to the defendant would seem to be met. *See, e.g., Southern Pacific Co. v. Bogert,* 250 U.S. 483, 490, 39 S.Ct. 533, 536, 63 L.Ed. 1099 (1919). Whether one views the statute of limitations as creating a rebuttable presumption of delay and prejudice, *e.g., Churma v. U.S. Steel Corp.,* 514 F.2d 589, 593 (3d Cir.1975), or as having no evidentiary effect, *e.g., Banks v. U.S. Steel Corp.,* 105 L.R.R.M. 2770, 2771 (N.D.Ind.1980), the extremely lengthy delay here, during which time the plaintiff first achieved alternative employment and later secured another position with the defendant corporation, offered him ample opportunity to commence court action, and he has shown no excuse for not doing so. Further, the turnover in relevant records and personnel after such a long

period prejudices the defendant's—and the plaintiff's—case.

■ In contrast, the pension-based claim did not accrue until the plaintiff's retirement, although he could have elected to start the clock running when the anticipatory breach occurred at the time that the earlier decisions were rendered. *See, e.g., Alabama Power Co. v. Davis,* 383 F.Supp. 880, 892 (S.D.Ala.1974), *aff'd on other grounds,* 542 F.2d 650 (5th Cir.1976), 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). Having retired in 1982, plaintiff is still well within the analogous six-year statute of limitations, and he cannot be said to have inexcusably delayed his pension claim resulting in prejudice to the defendant. *See, e.g., Tennyson v. Babcock & Wilcox, supra,* at 2930.

Defendant's argument that the proper defendant is the pension plan, not the corporation, is unavailing. The amendment to Section 2022 [1] in effect removed the corporation's right to dismiss for failure to join the pension fund; they both fall under the umbrella of the Act's reference to "employer," albeit that the primary liability is on the pension fund. *See, e.g., Bunnell v. New England Teamsters, supra* at 452.

■ Defendant's final argument that plaintiff is required to exhaust the pension plan's internal remedies has merit.[2] It is well settled that the exhaustion doctrine is applicable to pension and benefit claims. *See, e.g., Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980); *Wolf v. National Shopmen*

*Pension Fund,* 512 F.Supp. 1182 (E.D.Pa. 1981); *Scheider v. U.S. Steel Corp.,* 486 F.Supp. 211 (W.D.Pa.1980); *Lucas v. Warner & Swasey Co.,* 475 F.Supp. 1071 (E.D. 1979). There has been no showing that any of the exceptions to the exhaustion doctrine —e.g., futility or lack of meaningful access—is applicable in this case. The two principal advantages of applying this doctrine here are administrative expertise and judicial economy. With regard to the expertise aspect, one court cogently commented as follows:

> [A] primary reason for the exhaustion requirement, here as elsewhere, is that prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases, may well assist the courts when they are called upon to resolve the controversies.

*See Amato v. Bernard, supra* at 568.

With regard to judicial economy, it may be that a review of the matter by the General Pension Board, as provided by § 7.1 of the defendant's Plan, may well solve the matter to the mutual satisfaction of the parties. The Board's consideration of the arguable nullity of plaintiff's intervening status [3] and its possible application of the continuous service exceptions [4] may serve as the basis for a settlement.[5]

Thus, while the reinstatement-related claim is dismissed with prejudice, the pension-based claim is dismissed without prejudice for failure to exhaust the plan's inter-

---

1. 38 U.S.C. § 2022: "In any such action only the employer shall be deemed a necessary respondent."

2. The ruling here is limited to the review by the plan's General Pension Board. In contrast, arbitration has not been shown to be clearly applicable and required. *Compare Lewis v. Merrill, Lynch, Pierce Fenner and Smith, Inc.,* 431 F.Supp. 271 (E.D.Pa.1977) *with Michota v. Annheuser Busch, Inc.,* 526 F.Supp. 299 (D.N.J. 1980).

3. In dismissing plaintiff's reinstatement-related claim, its merits have not been reached. Thus, a possible view is that the reinstatement question and also the plaintiff's subsequent employment elsewhere—in contrast to the voluntary relinquishment of his pension rights, *e.g., Dom-*

*inguez v. Bethlehem Steel Corp.,* No. 78–204 (E.D.Pa. July 18, 1983)—constitute a nullity for purposes of calculating continuous service for pension purposes. Such a ruling, if the Board adopts it, may be regarded as *sui generis* due to the special circumstances of this case.

4. *See* 1980 Pension Plan, § 5.1(b)(4).

5. The General Pension Board, having fiduciary obligations to the plaintiff, should be reminded of the strong public policy against forfeiture of pension benefits. *See, NLRB v. AMAX Coal Co.,* 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981); *Abrahams v. Thatcher Glass Mfg. Co.,* No. 82–2982 (E.D.Pa. June 26, 1983).

nal remedies, with leave to be re-filed in this court if the result of such remedies is unavailing.[6]

I reach the following:

## CONCLUSIONS OF LAW

1. This court has subject matter jurisdiction under provisions of 38 U.S.C. § 2021 *et seq.*, formerly 50 U.S.C.App. § 459.

2. This court has *in personam* jurisdiction over the parties who have appeared here through counsel.

3. Venue lies properly in this court.

4. Plaintiff's reinstatement-related claim is barred by laches and will be dismissed with prejudice.

5. Plaintiff's pension-based claim will be dismissed without prejudice for failure to exhaust internal pension plan remedies.

6. For the reasons set forth in the DISCUSSION, an appropriate order will be entered implementing the CONCLUSIONS OF LAW set forth herein.

6. The Pension Board may be joined as a de-

fendant should this suit need to be re-filed.