**Robert L. TEETER**

v.

**SUPPLEMENTAL PENSION PLAN OF CONSOLIDATED RAIL CORPORATION.**

**Civ. A. No. 87–0027.**

United States District Court, E.D. Pennsylvania.

Jan. 11, 1989.

Leonard Spear, Philadelphia, Pa., for plaintiff.

M. Duncan Grant, Pepper Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## MEMORANDUM

CAHN, District Judge.

Robert L. Teeter has been an employee of the Consolidated Rail Corporation (Conrail) and its predecessors in interest since April 15, 1949. Although he was entitled to join a forerunner of the defendant pension plan upon initial employment, the plaintiff did not elect membership until May 31, 1956. Plaintiff asserts that the only reason he failed to join the plan immediately was that no one informed him of his eligibility. The defendant grants prior service credit to employees who can show that a late election was caused by such an administrative error. The Pension Adminis-

tration Committee (Committee) of the defendant, however, found that there was insufficient evidence of a mistake to warrant granting plaintiff's application for retroactive service credit.

Plaintiff seeks a declaratory judgment that the Committee's decision was in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. A trial was held on the merits, and defendant now asserts that plaintiff's claim is barred by laches or, in the alternative, that defendant complied with ERISA. Because I find that the claim is not barred by laches and that the defendant violated ERISA when it refused to consider certain of the plaintiff's evidence, I will remand this action to the defendant for reconsideration.

## BACKGROUND

On April 15, 1949, the plaintiff took a position as an assistant engineer at the Springfield, Ohio district office of the New York Central Railroad (N.Y.C.). It is undisputed that he was entitled to join the N.Y.C. pension plan at that time. The plaintiff, however, asserts that while at Springfield he was never informed of the existence of the pension plan. Later, he was transferred to the N.Y.C. office in Cleveland, Ohio, where he was finally told of his eligibility for the plan. He elected to join immediately, and his participation became effective on June 1, 1956.

Shortly after becoming a member, the plaintiff sent a hand-written letter to the plan administrator inquiring whether it would be possible to make retroactive contributions for the time during which he was unaware of his eligibility. The plan administrator replied with a form letter stating that the plan would not grant credit for service rendered prior to joining the plan. Plantiff took no further action to enforce his claim at that time.

Between 1956 and 1983, the plaintiff's pension claim remained dormant. In the meantime, however, N.Y.C. merged with the Pennsylvania Railroad to form the Penn Central Transportation Company.

The combined entity became insolvent and transferred certain of its rail assets to Conrail. Plaintiff became an employee of Penn Central and then finally Conrail without incurring a service break. The Penn Central Transportation Company Supplemental Pension Plan merged with the Conrail plan. The plaintiff's right to service credit for the years 1956 until the present is undisputed.

On March 4, 1983, the plaintiff began the process which brought this case into federal court. He wrote to George J. Jacks, the administrator of the defendant pension plan, and requested a credit for prior service. The request was denied. The plaintiff then sought assistance from several of his associates at Conrail. These efforts eventually resulted in referral of his claim to the Committee.

It is the actions taken by the Committee which are at the core of this dispute. The Committee has a policy of granting prior service credit to claimants that can demonstrate they did not join the plan when first eligible because N.Y.C. failed to provide election materials or accurate information about the plan. N.Y.C. administrative practice required employing officers to inform new employees of their right to join the plan and to assist them in electing membership. The Committee, however, will not grant retroactive service credit unless the claimant can demonstrate some tangible evidence of an administrative error. In the absence of contrary evidence the Committee simply assumes that N.Y.C. followed its policy of informing new employees of their eligibility for the plan. In this case the Committee wrote the plaintiff a letter denying his claim on the grounds that the plaintiff had not provided any evidence other than his unsubstantiated allegation. The Plaintiff was informed of his right of review and that he was permitted to submit pertinent documents and comments in writing.

The Plaintiff asked for a review from the Committee's decision. In conjunction with the review, plaintiff submitted a polygraph examination corroborating his statement that he was unaware of his eligibility between 1949 and 1956. The Committee refused to hear the polygraph evidence on the ground that it was not reliable enough to be used in an adjudicatory setting. Plaintiff's claim was denied for a second time on February 20, 1986.

On February 28, 1986, plaintiff wrote to the Committee and asked it to reconsider his claim. He specifically asked the plan administrator to have the Committee "advise of any way that I can convince them that my claim is just and truthful." Defendant sent a reply stating that tangible evidence was necessary before plaintiff's claim could be granted and that plaintiff had exhausted the review process. In early August of 1986, plaintiff made another attempt to have his claim reconsidered. He wrote a letter to the Committee and attached notarized statements made by three of his contemporaries at Springfield. Two of the employees had been hired within three months of the plaintiff and the other within 17 months. These employees stated that they too had not been given an opportunity to join the plan on initial employment. The statements obviously rebut the presumption of the Committee that all employees of N.Y.C. were told of the existence of the plan. Nevertheless, the Committee never considered these statements. The plan administrator merely sent a letter to the plaintiff informing him that he had exhausted his rights of appeal.

Plaintiff then hired a lawyer and filed suit before this court. At trial other evidence tending to support his claim came to light. First, only one of the N.Y.C. employees at Springfield who started around the time when plaintiff began signed up for the pension plan immediately. In fact, that person was the employing officer, who, interestingly enough, was the individual charged with informing the other employees of the terms of the plan. In addition, there was evidence at trial that when a new employee did not want to join the pension plan, he was asked to sign a form electing out of the plan. There was no such document in the plaintiff's file. None of this evidence was considered by the Committee.

## DISCUSSION

*Laches*

■ Defendant's first argument is that plaintiff's claim is barred by laches. In general, laches requires a showing that the non-moving party failed to diligently prosecute the claim and that the moving party suffered prejudice because of the delay. *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). The resolution of these issues is committed to the sound discretion of the trial court. *Burnett v. New York Central Railroad Company*, 380 U.S. 424, 435, 85 S.Ct. 1050, 1058, 13 L.Ed.2d 941 (1965).

The courts have been reluctant to apply the doctrine of laches to pension cases. The rule is, as I stated in an earlier decision, that pension claims accrue on retirement, but the claimant has the option of bringing suit when an anticipatory breach occurs. *Troiani v. Bethlehem Steel Corp.*, 570 F.Supp. 1140, 1143 (E.D.Pa.1983) (citing *Davis v. Alabama Power Co.*, 383 F.Supp. 880, 892 (N.D.Ala.1974), *aff'd per curiam*, 542 F.2d 650 (5th Cir.1976), *aff'd on other grounds*, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977)). *See also Gall v. United States Steel Corp.*, 598 F.Supp. 769 (W.D.Pa.1984); *Letson v. Liberty Mutual Insur. Co.*, 523 F.Supp. 1221 (N.D.Ga. 1981).

Defendant argues that the case at bar is different from other pension cases because the plaintiff wrote a letter in 1956 asking for the relief requested today. That letter, defendant asserts, started the clock running on plaintiff's claim, and if the plaintiff wanted to appeal the denial of benefits, he had to do so in 1956. I cannot agree. The plaintiff merely sent an informal handwritten inquiry to the N.Y.C. plan. The plan sent back a form letter stating that no credit would be given for service prior to the date of election. Plaintiff did not choose to start the clock running in 1956. He waited until retirement was rapidly approaching and then filed a formal complaint with the Committee in 1983. There was nothing improper in plaintiff's actions.

There are several other reasons why it would be inequitable to bar plaintiff's claim. First, it is unclear that defendant has been sufficiently prejudiced by the passage of time so "as to overcome the policy of ERISA favoring recovery of benefits that have been earned through long years of service." *Atkins v. Bowen*, 690 F.Supp. 383 (E.D.Pa.1988). The defendant *does* allow retroactive service credit in cases where it can be shown that an administrative error prevented the employee from joining the pension plan. They were willing to hear the plaintiff's claim in this case despite the fact that the events in question occurred over 30 years ago. This fact undermines the defendant's argument that the passage of time precludes a fair adjudication. Second, the plaintiff was not represented by a lawyer and was not informed of his right to appeal the decision of the N.Y.C. pension board in 1956. These are relevant factors for consideration in determining whether to exercise equitable discretion. *Cann v. Carpenters Pension Trust for Southern California*, 662 F.Supp. 501, 510 (C.D.Cal.1987) (lack of diligence in pursuing pension claim mitigated by fact plaintiff was unrepresented by lawyer and uninformed of rights of appeal). Today a full and fair review of a claim requires pension plan administrators to inform claimants who have had an application for benefits rejected of their rights of appeal. 29 C.F.R. § 2560.503–1(f) (1987). *See also Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 391–392 (7th Cir.1983) (requirements are mandated by ERISA even where regulations are inapplicable).

ERISA is the source of these rules, but the principles are applicable to pre–ERISA cases as well. It would be unfair to bar plaintiff's claim simply because he wrote a letter to the plan administrator in 1956 asking whether he was entitled to his service credit. For these reasons, I find that the plaintiff's claim is not barred by laches.

*Review of the Committee Decision*

■ Before turning to the question of whether the defendant acted in violation of ERISA, it is necessary to resolve the issue of what standard of review applies to decisions of pension plans to deny benefits. As the Third Circuit Court of Appeals has rec-

ognized, the weight of authority is that the denial of a claim for benefits must be reviewed under an arbitrary and capricious standard. *Bruch v. Firestone Tire and Rubber Co.*, 828 F.2d 134, 138 (3d Cir.1987), *cert. granted,* — U.S. —, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988). In *Bruch*, however, the Court of Appeals specifically declined to apply the arbitrary and capricious standard and instead reviewed the decision of a plan administrator *de novo*. The plaintiff argues that he too is entitled to have the defendant's decision reviewed *de novo* by this court. Defendant takes the position that *Bruch* is inapplicable and that their decision can only be overturned if found to be arbitrary and capricious.

In *Bruch*, the plaintiffs were three classes which in total represented over 500 formerly salaried employees of the plastics division of Firestone Tire and Rubber Company. Firestone sold its plastics division to the Occidental Petroleum Corporation, and most of the employeess later accepted positions with Occidental. The plaintiffs claimed that (1) the sale of the division triggered a right to severance benefits; (2) employees who elected early retirement after the sale were entitled to full pre-sale benefits; (3) the sale of the division triggered vesting of employee stock option rights; and (4) the employees were entitled to obtain information about benefits from their former employer.

The key to *Bruch* is the Court of Appeals' valid concern that pension plan administrators cannot always be trusted to act impartially. The arbitrary and capricious standard was adopted from pension plans established under § 302(c) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5). However, LMRA plans require equal employee and employer representation in plan administration. The decisions of these plans was, therefore, likely to be unbiased. In contrast, the plans at issue in *Bruch* were controlled entirely by company personnel. Furthermore, the *Bruch* plans were unfunded. Any expenditure would have come directly out of the

company's pocket. The conflict of interest was obvious, and the arbitrary and capricious standard made little sense under the circumstances. The court instead applied the law of trusts which states that "when a trustee is thought to have acted in his own interest and contrary to the interest of the beneficiaries, his decisions are to be scrutinized with the greatest possible care." *Bruch*, 828 F.2d at 145. Thus, when there is reason to believe a plan administrator cannot be impartial, *de novo* review is appropriate.

Whether the arbitrary and capricious or *de novo* standard applies depends on the context of the case. *Bruch*, 828 F.2d at 140. When an individual claim for benefits is in dispute, as opposed to the potentially huge liability at question in *Bruch*, the Court of Appeals has indicated that the arbitrary and capricious standard is still applicable. In *Shiffler v. Equitable Life Assurance Soc'y*, 838 F.2d 78 (3d Cir.1988), the Court of Appeals used the arbitrary and capricious standard to review the denial of pension benefits to a widow who was suing for benefits due from the death of her husband. The Court stated:

> We recognize that in *Bruch* the arbitrary and capricious standard was not applied but we do not understand that case necessarily to apply in a situation such as this involving "personal claims for benefits," *see Struble*, 732 F.2d at 333, even though it could hardly be said that Equitable is disinterested in this matter. (referring to *Struble v. New Jersey Brewery Employee's Welfare Trust Fund*, 732 F.2d 325 (3d Cir.1984)).

*Shiffler*, 838 F.2d at 83 n. 7. *See also Pierce v. American Waterworks Co.*, 683 F.Supp. 996, 1000 (W.D.Pa.1988).

■ The case at bar is an individual claim for benefits like that in *Shiffler* and unlike that brought in *Bruch*. Therefore, I must apply an arbitrary and capricious standard to the decision of the defendant.[1]

---

1. It must be noted that *Bruch* was specifically limited to questions of law. *Bruch*, 828 F.2d at 144 n. 9. The court declined to determine the deference due to determinations of facts by plan administrators. Whether plaintiff was told of his eligibility is a question of fact.

The plaintiff asks the court to overturn the factual finding of the defendant that an administrative error did not occur in 1949. I can do so under the arbitrary and capricious standard only if the plaintiff can show that the denial of benefits was a clear error and was irrational. *Shiffler*, 838 F.2d at 78. In addition, in reviewing the decision of the defendant, I cannot consider evidence that was not before the Committee at the time of their final decision. *Wolfe*, 710 F.2d at 394; *Wardle v. Central States, Southeast and Southwest Area Pension Fund*, 627 F.2d 820, 824 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). The evidence before the Committee was, on the one hand, the policy of N.Y.C. requiring new employees to be apprised of their right to join the plan. On the other hand, the plaintiff put into evidence his statement that he had not received notification of his eligibility until 1956 and the corroborating polygraph examination. Based on this evidence alone, it was rational for the defendant to conclude that an administrative error had not occurred. However, this does not nearly end the inquiry.

*Due Process*

The real question in this case is whether the defendant violated plaintiff's due process rights by failing to specify the reasons for the decision and refusing to hear additional evidence. I find that plaintiff's due process rights were violated.

Pension plans are required to comply with the full and fair review requirements of ERISA, 29 U.S.C. § 1133, and the regulations promulgated under the section which appear at 29 C.F.R. § 2560.503–1(f) (1987). The failure to do so constitutes a violation of due process. *Grossmuller v. International Union, UAW*, 715 F.2d 853 (3d Cir.1983); *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan*, 797 F.2d 521 (7th Cir.1986), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed.2d 165.

Fiduciaries of pension plans are required under § 503(2) of ERISA to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). In order to help define the meaning of full and fair review, the Department of Labor promulgated regulations which require a plan administrator to provide a claimant who has had a claim for benefits denied with:

(1) The specific reason or reasons for the denial;

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503–1(f) (1987). The Third Circuit Court of Appeals has found that a full and fair review requires "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented to both parties prior to reaching and rendering his decision." *Grossmuller*, 715 F.2d at 858 n. 5. Furthermore, the defendant has an affirmative responsibility to gather information that bears on the plaintiff's claim and is reasonably available. The failure to discharge that duty can constitute reversible error. *Toland v. McCarthy*, 499 F.Supp. 1183, 1190 (D.Mass.1980).

With these requirements in mind, I now turn to the specific claims raised by the plaintiff. First, plaintiff asserts that it was error for the defendant to refuse to hear oral testimony of the plaintiff on whether or not he had received notification of his eligibility for the pension plan. Plaintiff takes the position that live testimony was indispensable. The law, however, is otherwise. Pension boards are not required to grant a claimant a chance to personally plead his case. *Brown*, 797

F.2d at 534 (7th Cir.1986); *Grossmuller,* 715 F.2d at 858 n. 5. Second, it is urged that the Committee erred in refusing to consider the polygraph examination which indicated the plaintiff was truthful when he stated he had not received information concerning the plan before 1956. Polygraph evidence is generally inadmissible in a court of law. 3A Wigmore, *Evidence* § 999 (Chadbourne rev. 1970 & Supp.1988) It was certainly not a clear error of law for the Committee to refuse to consider the polygraph test results.

█ There are, however, several more serious problems with the Committee's handling of the plaintiff's case. First, the defendant rejected the plaintiff's claim solely on the basis that N.Y.C. had a policy of informing all new employees of their eligibility for the plan. That may have been the policy, but it seems that the policy was honored in the breach—at least at the Springfield office. The plaintiff procured three affidavits from people who had worked at Springfield at approximately the time that he did, all of whom stated that they too had not been told of their eligibility upon initial employment. This is very strong evidence that the policy was not enforced at Springfield and lends credence to plaintiff's version of the facts.

The defendant claims that the statements of the other Springfield employees were brought to their attention after the final appeal and that, therefore, they had no responsibility to consider them. I find, however, that as a requirement of due process under ERISA the defendant was required to hear this evidence.

Under 29 C.F.R. § 2560.503-1(f) (1987) the plan administrator had a responsibility to give the plaintiff a description of the specific reasons for denial, any plan provisions which were relied on in reaching a decision, and any information necessary to perfect the claim. The defendant did not satisfy these requirements. The letter denying the plaintiff's claim stated only that the Committee was refusing the application because the sole evidence of an administrative error was the plaintiff's word. The Committee requires more to establish the occurence of an error which allegedly took place 40 years ago. The minutes of the meeting establish that the reason for requiring additional evidence is that the Committee assumed the N.Y.C. policy of informing new employees of their pension rights was carried out uniformly. However, there was no mention of the N.Y.C. policy in the letter to the plaintiff. Thus, the real reason for the denial, that the Committee assumed the administrative practice had been followed, was never communicated to the plaintiff. If the defendant had been more specific concerning its reliance on the N.Y.C. policy, a policy the plaintiff believed was never followed, perhaps the statements of the former employees would have surfaced six months sooner, and we would have all avoided a costly federal case.

Furthermore, plaintiff offered evidence tending to show that individuals who were eligible for the plan, but who did not want to join, signed a form specifically stating they did not wish to elect membership. That form was not in the plaintiff's file. This is evidence that only the defendant could have and should have procured.

I do not find that any pension claimant who is denied benefits and at a later time finds a scintilla of evidence in his favor can reopen the claim. However, in this case some of the evidence came to light shortly after the denial. The evidence may well have been gathered earlier if the defendant had made a serious effort to satisfy its requirements under ERISA. It would have taken little effort to reconsider the plaintiff's claim when the important statements of the Springfield employees became available.

█ Since the errors made by the defendant concern the refusal to consider evidence which should have been before them, the proper course of action is to remand this case to the plan. *Wolfe,* 710 F.2d at 394; *Wardle,* 627 F.2d at 828. Where the plan has failed to take reasonable steps to develop available information or ignores vital evidence, the proper course is to remand the case for consideration of the new evi-

dence. *Beggs v. Mullins*, 499 F.Supp. 916, 920 (S.D.W.Va.1980).

### ORDER

AND NOW, this 11th day of January, 1989, IT IS ORDERED that judgment is ENTERED in favor of the plaintiff. The defendant is ORDERED to reconsider plaintiff's claim in conformance with the opinion of the court. The Clerk of this court is directed to close the docket of the within case.