**Donald A. LOWRY, Plaintiff–Appellant,**

v.

**BANKERS LIFE AND CASUALTY RETIREMENT PLAN, et al., Defendants–Appellees.**

**No. 88–1164.**

United States Court of Appeals, Fifth Circuit.

April 28, 1989.

Carl D. Adams, Boyd & Adams, Dallas, Tex., for plaintiff-appellant.

Stuart M. Reynolds, Jr., Jennifer Bolen–Almquist, Moore & Peterson, Dallas, Tex., for defendants-appellees.

ON PETITION FOR REHEARING

Before GOLDBERG, HIGGINBOTHAM and DAVIS, Circuit Judges.

PER CURIAM:

In his petition for rehearing, which we construe as a petition for panel rehearing, the appellant, Donald Lowry, argues that the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), mandates a rehearing in this case. *Bruch* holds that courts should apply a *de novo* standard of review in ERISA actions under 29 U.S.C. § 1132(a)(1)(B) (1982) unless the terms of the trust instrument re-

quire deference to plan administrators. Because the terms of the plans in this case make a *de novo* standard inappropriate, we deny the petition for panel rehearing, adding these words to supplement our previous decision.[1]

The appellant, Donald Lowry, brought this action seeking benefits that the appellee plan administrators denied to him under their reading of the terms of the Bankers Life Savings and Retirement Plans.[2] 29 U.S.C. § 1132(a)(1)(B) (1982). Applying the test set forth in *Dennard v. Richards Group*, 681 F.2d 306, 314 (5th Cir.1982), the district court held that the actions of the plan administrators were not arbitrary and capricious. *Lowry v. Bankers Life*, 678 F.Supp. 635 (N.D.Tex.1988). We affirmed in a brief opinion. *Lowry v. Bankers Life*, 865 F.2d 692 (5th Cir.1989).

Four days after we issued our decision, the Supreme Court issued its opinion in *Firestone v. Bruch*, —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80. In *Bruch*, the petitioner, Firestone Tire & Rubber ("Firestone"), sold one of its divisions to Occidental Petroleum. Six Firestone employees in the division, who were rehired by Occidental, sought severance benefits under Firestone's unfunded termination pay plan. The plan provided that "If your service is discontinued prior to the time you are eligible for benefits, you will be given termination pay if released because of a reduction in work force." —— U.S. at ——, 109 S.Ct. at 951. Determining that the sale did not constitute a "reduction in work force" within the meaning of the termination pay plan, Firestone denied severance benefits. The respondents then filed a class action under 29 U.S.C. § 1132(a)(1), seeking, *inter alia*, severance benefits on the ground that the sale constituted a "reduction in work

force" under the terms of the termination pay plan.

The district court granted summary judgment to the employer on the denial of severance benefits, holding that Firestone's decision under the plan was not arbitrary or capricious. The Third Circuit reversed, holding that "where an employer is itself the fiduciary and administrator of an unfunded benefit plan, its decision to deny benefits should be subject to *de novo* judicial review." —— U.S. at ——, 109 S.Ct. at 952.

The Supreme Court affirmed the Third Circuit's result on the standard of review issue. Making clear that the lower courts had erroneously imported an arbitrary and capricious standard of review into § 1132(a)(1)(B) determinations under ERISA, the Court held that a "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." —— U.S. at ——, 109 S.Ct. at 956. In other words, § 1132(a)(1)(B) provides an independent federal cause of action to enforce contractual rights under a plan instrument, and the scope of judicial review in such a contract action is *de novo*, unless the terms of the plan require deference to the acts of plan administrator.[3] The Court held in addition that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id.* (citation omitted).

Courts adjudicate controversies, and one of their primary adjudicative functions in common contract disputes is to render an authoritative *de novo* interpretation of an

---

1. We assume that *Bruch* applies retroactively to our decision, and we consider its effect, despite the appellant's failure to raise the *de novo* issue at any earlier point in these proceedings, because it raises important questions of law.

2. The appellant claims that he is entitled to certain benefits under both the Savings Plan and the Retirement Plan. The bulk of the contested benefits concern the Retirement Plan.

3. Because of our disposition of this case, we have no occasion, of course, to consider the principles of construction appropriate to *de novo* review of benefits determinations challenged under 29 U.S.C. § 1132(a)(1)(B). We assume that *Bruch* mandates the development of a body of federal common law applicable to *de novo* review in § 1132(a)(1)(B) actions.

instrument's language. At common law, if a reviewing court determined that the terms of a plan instrument did not provide for a plan administrator's discretionary exercise of power when interpreting a trust instrument or making eligibility determinations, the court did not grant deference to the plan administrator in reviewing her interpretations and actions. Thus, before the passage of ERISA, courts reviewed the acts of plan administrators under a *de novo* standard where the terms of the instrument did not provide for the permissive exercise of a plan administrator's power. *Bruch*, —— U.S. at ——, 109 S.Ct. at 955 ("If the plan did not give the employer or administrator discretionary or final authority to construe uncertain terms, the court reviewed the employee's claim as it would have any other contract claim—by looking to the terms of the plan and other manifestations of the parties' intent" (citing cases)). On the other hand, before ERISA's implementation, courts gave deference to administrators' decisions when the terms of the instrument provided for discretionary authority. *See, e.g., Smith v. New England Telephone*, 109 N.H. 172, 246 A.2d 697, 698 (1968) (arbitrary and capricious standard appropriate where a plan gave the committee "authority to 'determine conclusively for all parties all questions arising in the administration of the Plan'").

*Bruch* instructs us that Congress did not intend to constrict the common law rights of employees when it enacted 29 U.S.C. § 1132(a)(1)(B) as part of ERISA. The *Bruch* Court made clear that the wholesale importation of an arbitrary and capricious standard of review in § 1132(a)(1)(B) actions erroneously "afford[ed] less protection to employees and their beneficiaries

than they enjoyed before ERISA was enacted." —— U.S. at ——, 109 S.Ct. at 956.

With *Bruch*'s teachings in mind, we analyze the distinctions between the plan instrument in *Bruch* and the plan instruments in this case. The termination pay plan in *Bruch* did not grant discretionary power to the Company/Administrator to interpret the plan. In particular, the plan did not grant the administrator discretionary power to interpret the all-important phrase "reduction in work force." Because the plan was silent with respect to the administrator's permissive interpretive power, the Court held a *de novo* standard appropriate to review the administrator's acts, consistent with the common law decisions predating ERISA's enactment.

The instruments in this case sharply contrast with the termination pay plan in *Bruch*. The Bankers Life Savings Plan grants permissive authority to the Plan Committee to "interpret and construe" the Savings Plan and the power "to determine all questions of eligibility and status under the Plan." The Bankers Life Retirement Plan grants to the Plan Committee the power to "determine all questions arising" in the administration of the Plan, "including the power to determine the rights or eligibility of Employees and Participants and their beneficiaries, and the amounts of their respective interests." Both Plans provide that Committee determinations are binding on all persons, subject to the claims procedures under the Plans by which the Committee decides appeals from claim denials.[4]

Like the court in *Smith*, 246 A.2d 697, 698, we believe that the unambiguous language in the Plans mandates deference to

4. The appellant argues as a threshold matter that a *de novo* standard should apply under *Bruch* because the Plans do not delegate particular, defined decisionmaking power to the Plan Committees. Apparently, the appellant is arguing that the Plans say nothing about where actual decisionmaking authority lies, and that we should interpret this alleged lack of clarity as silence vis-a-vis the administrators' discretionary power, thus mandating *de novo* review. We read the applicable provisions to state clearly that the Committees' authority includes but is

not limited to the authority explicitly provided in the Plans, which we quote in the text. In any event, the district found that the Retirement Plan Committee exercised particular, defined authority, a determination we read as a *de novo* interpretation of the plan. 678 F.Supp. at 639. And although the Company reserves the right under the Plans to expand or contract the authority explicitly delegated to the Committees, this does not affect the terms of the Plans as constituted and as they apply to this case.

the plan administrators under the circumstances of this case.[5] Unlike in *Bruch,* there is "evidence that under" the trust instruments "the administrator has the power to construe uncertain terms [and] that eligibility determinations are to be given deference." *Bruch,* —— U.S. at ——, 109 S.Ct. at 954.

■ . Given the language of both the Savings and Retirement Plans, then, *Bruch* dictates that an abuse of discretion standard should apply in this case. *Bruch,* —— U.S. at ——, 109 S.Ct. at 954–55. Our earlier opinion and the opinion of the district court make clear that the plan administrators in this case did not abuse their discretion. Consequently, we find it unnecessary at this point to determine whether the abuse of discretion standard envisioned by the *Bruch* court is equivalent to or less strict than our circuit's preexisting arbitrary and capricious standard. *Dennard,* 681 F.2d at 314. In either instance, the result in this case would be identical. Thus, a remand would not serve the interests either of justice or judicial economy in this case.[6]

Because a *de novo* standard does not apply to our review of the plan administrators' acts in this case, we must also address *Bruch's* holding that "if a benefit plan gives discretion to an administrator who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.'" —— U.S. at ——, 109 S.Ct. at 956 (citation omitted). Under both Plans in this case, the Company is the administrator. Lowry argues that because "the employer is also the person who makes the ERISA decisions, directly or through subservient committees, the employer benefits directly from a denial of benefits ... [and] its pocketbook will obviously be adversely impacted by any decision granting such benefits." Petition for Rehearing at 8.

■ Lowry did not present the conflict of interest argument to us on his initial appeal, and we will not consider it now. *See, e.g., Nissho–Iwai Co., Ltd. v. Occidental Crude Sales,* 729 F.2d 1530, 1549 (5th Cir.1984). The appellant cannot justify raising the conflict of interest argument for the first time in his petition for rehearing. A plan administrator's conflict of interest is certainly material to judicial review under our circuit's pre-*Bruch* arbitrary and capricious standard. No one has questioned our circuit's pre-*Bruch* standard in this litigation until the appellant filed his petition for rehearing. Moreover, conflict of interest allegations may involve questions of fact.[7] In contrast, we have

---

**5.** We reach our result as a matter of law because the relevant plan language is not ambiguous. In the future, of course, the district courts will determine in the first instance the appropriate standard of review under § 1132(a)(1)(B) in cases involving particular plan instruments. Definitive constructions of plan language in some cases may involve questions of fact. But we have no occasion today to consider (1) whether *Bruch* requires *de novo* review unless a reviewing court determines as a matter of law that the terms of a plan grant discretionary authority to a plan administrator or fiduciary; or (2) whether *Bruch* allows a reviewing court to resolve questions of fact in determining the appropriate standard of review, and if so, what principles of construction are appropriate in the court's inquiry.

**6.** We note that "the arbitrary and capricious standard may be a range, not a point. There may be in effect a sliding scale of judicial review of trustees' decisions ...—more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is...."

The existence of a sliding scale in judicial review of ERISA trustees' decisions is suggested by the cases that, while purporting to apply a uniform 'arbitrary and capricious' standard, in fact give less deference to a decision the more the trustees' impartiality can fairly be questioned." *Van Boxel v. Journal Co. Employees' Pension Trust,* 836 F.2d 1048, 1052–53 (7th Cir. 1987) (Posner, J.) (citing, *inter alia,* Friendly, *Indiscretion About Discretion,* 31 Emory L.J. 747, 764, 784 (1982)). *See Bruch,* —— U.S. at ——, 109 S.Ct. at 950 ("[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed 'as a factor in determining whether there has been an abuse of discretion'") (citation omitted).

**7.** Incidentally, we note that with respect to the unfunded plan at issue in *Bruch,* "every dollar provided in benefits is a dollar spent by ... Firestone, the employer; and every dollar saved by the administrator on behalf of his employer is a dollar in Firestone's pocket." *Bruch v. Firestone Tire and Rubber Co.,* 828 F.2d 134, 144

considered the effect of *Bruch* on this case, despite the appellant's failure to raise the *de novo* argument below, because our inquiry involves only questions of law. Furthermore, we believe that fundamental fairness justifies our consideration of *Bruch* under the circumstances of this case.

Based on the foregoing discussion, the petition for panel rehearing is DENIED.

(3d Cir.1987). In contrast, the Retirement Plan in this case is a funded, defined-benefit plan. "[I]n these defined-benefit plans, the immediate impact of a decision to grant or deny benefits is on the trust itself and not on the employer; only if the total of all claims paid exceeds the actuarially anticipated amounts would benefit decisions by a trustee have a financial impact on the employer." Brief for Respondents at n. 19, *Firestone Tire & Rubber Co. v. Bruch,* No. 87–1054 (available on LEXIS, Genfed Library, Briefs File).