**Sarah Louise SLOVER, Plaintiff,**

v.

**BORAL HENDERSON CLAY PRODUCTS, INC., and Boral Henderson Clay Products, Inc./Benefit Plan Administrators, Inc., Defendants.**

**Civ. A. No. TY–87–339–CA.**

United States District Court,
E.D. Texas,
Tyler Division.

June 8, 1989.

**826**

Ron Adkison, Henderson, Tex., for plaintiff.

John F. Bufe, Tyler, Tex., for defendants.

## MEMORANDUM OPINION

JUSTICE, Chief Judge.

The above-entitled and numbered action came on for trial before the court on September 22, 1988. Plaintiff's causes of action all arise under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff seeks recovery of medical expenses that, she alleges, were denied improperly under a health insurance policy issued by defendants.

Prior to trial, an order was entered denying defendant's motion for summary judgment in part, and granting it in part. Partial summary judgment was granted in defendant's favor insofar as plaintiff sought to recover punitive damages under 29 U.S.C. § 1132 or extra-contractual damages, either compensatory or punitive, on her own behalf against the plan fiduciary under 29 U.S.C. § 1109(a). *See* Order of September 21, 1988 at 7. Summary Judgment was denied in all other respects. *Id.*

Defendant's motion in limine submitted prior to trial for exclusion of the testimony of Dr. Frank Floca and Dr. Thomas A. Harris, the two treating physicians in the case, was overruled at trial. Any evidence found inadmissible by the court was not considered in reaching this result.

At trial on September 21, 1988, before the court sitting without a jury, the parties introduced documentary and deposition evidence, as well as the testimony of witnesses. At the request of the court, parties submitted briefs following trial which addressed the issue of segregation of allowable charges from excluded charges based on the treatment received.

## FINDINGS OF FACT

The plaintiff, Sarah Louise Slover, resides in Henderson, Texas. At the time of the events in question, plaintiff was employed by defendant Boral Henderson Clay Products, Inc. The defendants, Boral Henderson Clay Products, Inc. and Benefit Plan Administrators, Inc. are incorporated in the state of Texas.

At issue in this lawsuit is an insurance policy entitled "Plan Document for Boral Henderson Clay Products, Inc." (hereinafter "plan"), effective June 1, 1986, and issued by defendant Boral Henderson Clay

Products, Inc., to its employees, including plaintiff. It is not disputed that the plan is self-funded by Boral Henderson Clay Products, Inc.

On or about November 13, 1986, plaintiff submitted a claim for insurance under the plan for treatments received by her daughter, Sherri Slover. It is not contested that Sherri Slover was, at that time, a covered dependent under the plan. The claim was initially denied by defendant Benefit Plan Administrators, Inc., on January 22, 1987, and her claim on appeal was denied by letter dated March 26, 1987, from LaRea Albert of Benefit Plan Administrators, Inc. Plaintiff left the employ of defendant Boral Henderson Clay Products, Inc., after the claimed expenses were incurred, but before the claim was rejected.

Sherri Slover was admitted to Brazos Psychiatric Hospital on October 13, 1986, where she was treated by a number of health care professionals, including Frank Floca, M.D., and Thomas H. Harris, Ph.D. Ms. Slover was treated for depression and for mixed substance abuse, involving use of drugs such as "Eve," "Ecstasy," "LSD," cocaine, marijuana, and alcohol. She was released on October 28, 1986.

The policy of insurance at issue in this case explicitly designates defendant Benefit Plan Administrators, Inc., as the plan supervisor. Defendant's Exhibit 1, Plan Document for Boral Henderson Clay Products, Inc., at 22 (effective June 1, 1986). It further designates defendant Boral Henderson Clay Products, Inc., as the administrator of the plan, as well as plan sponsor and fiduciary. *Id.* Among the allowable benefits under the plan are "charges relating to treatment or cure of alcoholism," and "charges incurred for or on account of a mental or nervous disorder while an inpatient ..." *Id.*, at 19. Among charges explicitly exempted from coverage are "charges relating to drug rehabilitation," or "narcotism." *Id.*, at 21.

The plan provides that notice of a claim be given first to the administrator or plan supervisor with a description of the basis for the claim. A general provision of the plan allows the administrator to employ "persons or firms to process claims and to perform other Plan-connected services." This person or firm is employed as the plan supervisor, but the administrator is charged with management of the plan. *Id.* Further, under the designation "redress of claims," the plan provides as follows:

In the event a claim is denied by the Administrator, the denial shall be in writing ... and shall set forth the reasons for denial and specify the pertinent plan provisions ... A claimant or his duly authorized representative has a right to appeal denial of his claim to the administrator ... The fiduciary shall decide the appeal within 60 days after receipt of the appeal by the Administrator

.    .    .    .    .

*Id.*, at 23.

On February 9, 1987, Ms. LaRea Albert, of Benefit Plan Administrators, Inc., telephoned Allen Harris, R.N., at Brazos Psychiatric Hospital to request a breakdown of expenses for Sherri Slover's treatment for alcohol abuse separate from expenses incurred for Sherri Slover's treatment for drug rehabilitation. On February 11, 1987, Allen Harris responded to Ms. Albert's telephone request by letter. In substance, Mr. Harris responded that Brazos Hospital does not separate alcohol from other substance abuse programs, emphasizing that the commonalities of various addictions make combined treatment advisable. Referring to Sherri Slover, he wrote that it would not have been possible to separate the components of her treatment:

Her level of dysfunction had progressed to the point where she was unable to function in school and in social situations. She expressed suicidal thoughts. My professional opinion is that any management of Ms. Slover's case would necessitate the treatment and consideration of all the components of her case.

Defendants' Exhibit No. 7, Letter from Allen Harris, R.N. to LaRea Albert (Feb. 11, 1987).

Plaintiff's claim was initially denied by Benefit Plan Administrators, Inc., on January 22, 1987. On February 20, 1987, plaintiff submitted a written appeal of the claim

denial to Mr. Tom Crawford, of Boral Henderson Clay Products, Inc. In a letter, dated March 26, 1987, from LaRea Albert of Benefit Plan Administrators, Inc., plaintiff's claim appeal was denied. The letter stated that the claim and affidavits had been reviewed by the company president and vice-president, but that the company would not change its decision, citing the guidelines set forth in the plan document.

Several facts pertaining to the treatment received by Sherri Slover are uncontested. First, it is not contested by defendant that the physicians treating her would be "qualified" within the constraints of the plan document, assuming the charges were payable. *Id.* at 4. It is also not contested that the Brazos Psychiatric Hospital conformed to the requirements of the plan; assuming, again, that the charges were payable. *Id.* On a related issue, it is not contested that the charges made for Sherri Slover were reasonable for like treatment in the same locality. The total amount of the claim was $9,401.80. *See Final Pre-trial Order*, Uncontested Facts, at ¶ 16.

At trial, LaRea Albert, Vice President of Plan Administration and Claims at Benefit Plan Administrators, Inc., testified that she had made the initial decision to reject plaintiff's claim. Ms. Albert admitted that the sole factual basis for her determination was the Psychiatric and Physical Evaluation, prepared by Dr. Frank Floca, M.D., on October 14, 1988. Plaintiff's Exhibit No. 6. Ms. Albert admitted that she knew of the patient's diagnosed depression at the time she made her decision to deny the claim, despite her understanding that the plan explicitly covers psychiatric care. Ms. Albert indicated that she had discredited Mr. Harris' assertions to an unspecified degree, because he is not a physician.

In making her decision, LaRea Albert admitted consideration of the Admission Note of Brazos Psychiatric Hospital, dated October 13, 1986; Multidisciplinary Progress Notes; Psychiatric and Physical Evaluation; Discharge Summary; Outpatient Discharge Summary; and the February 11, 1987 letter of Allen Harris.

When asked explicitly if the plan allowed her to deny the charges based on her interpretation, Ms. Albert admitted that it did not. In her estimation, the plan administrator becomes most meaningfully involved at the appeal stage by re-reviewing the file. In making her determination of ineligibility, Ms. Albert categorized the treatment as drug rehabilitation.

In her letter to Tom Crawford of Boral Henderson Clay Products, Inc., dated February 20, 1987, plaintiff appealed the denial of her claim, primarily on the basis of her ignorance of the plan provisions; and on the assurances made by Donna Nutt, of Boral Henderson, Clay Products, Inc., that the costs would be covered. Frank A. Frederick, Personnel Manager of Boral Henderson, responded to this letter by transmitting the appeal file to LaRea Albert of Benefit Plan Administration, Inc., including plaintiff's letter, a statement from Donna Nutt, Personnel Assistant, and a statement from LaRea Albert, herself. Defendant's Exhibit No. 6. In his transmittal letter, Mr. Frederick stated:

> According to the plan document, the plan administrator is responsible for reviewing and responding to claim appeals. Please process this appeal in accordance with the provision of the plan document. Also, please provide me with a copy of the appeal finding response.

Defendant's Exhibit No. 6.

The affidavit of plaintiff contained in the appeal file recited plaintiff's version of the facts. Plaintiff indicated that she had called Mr. Crawford upon receiving her denial, and that he said he would "check it out." Defendant's Exhibit No. 6. When Crawford returned the call, he told plaintiff's husband that the claim had been denied because the treatment was drug-related. At plaintiff's request, Ms. Kunze, business manager of Brazos Hospital, then contacted Ms. Albert to investigate the denial. Ms. Kunze conveyed to Ms. Albert the "cross-over" nature of Sherri Slover's addiction, involving both drugs and alcohol. *Id.* Plaintiff's affidavit also sets forth the circumstances surrounding a meeting she had with Crawford. Defendant's Exhibit

No. 6. In the meeting, plaintiff stressed to Crawford the fact that she had not received a copy of the new benefit plan, that she had always admitted the drug-related nature of the treatment, and that Donna Nutt had made assurances to her, to the effect that the costs were covered. *Id.*

In her affidavit, Donna Nutt stated that she told plaintiff that Sherri's treatment was covered if it was for psychiatric care in an accredited psychiatric hospital. Ms. Nutt also stated that, when she received notice of the denial, she called Ms. Albert, who stated "the medical records received from Brazos indicated a long history of drug abuse and dependency that included many illegal drugs."

In her own affidavit, Ms. Albert asserted that she told a Ms. Baden of Brazos that "if the charges were drug-related, there would be no coverage." Defendant's Exhibit No. 6. Ms. Albert disputes ever having spoken to Ms. Kunze of Brazos Hospital as alleged.

In addition to the above appeal file provided to Ms. Albert by Mr. Frederick, Ms. Albert testified to having "re-reviewed" the evaluation, discharge summary, and outpatient discharge summary. It was at this point that Ms. Albert contacted Allen Harris, R.N., regarding possible separation of alcohol treatment charges. In a letter dated February 11, 1988, Allen stated that the policy of the hospital was to treat drug and alcohol addiction in a combined fashion and not to separate the charges for each addiction. Ms. Albert subsequently drafted a letter to plaintiff denying her appeal. Defendant's Exhibit No. 9.

When questioned about his role in denying the benefits, Mr. Frederick stated that he relied on defendant Benefit Plan Administrators. His review, he admitted, was tantamount to review "for glaring error." When questioned closely on the file, Mr. Frederick could recall few of the details, either as to the centrality of drug abuse to the treatment or as to Ms. Slover's alcoholism. Frederick admitted not knowing what the final discharge diagnosis was at the time he agreed with Albert's assessment of the claim. In her letter to Frederick, dated

March 26, 1987, Albert responded to Frederick's initial request that she "re-review" the claim file. Defendant's Exhibit No. 8. In her letter response, Albert reiterated that the denial was based on "the policy guidelines set forth in the plan document." *Id.* Attached was a certification from Boral Henderson's insurance carrier stating "Notwithstanding any provision to the contrary, no benefits will be payable for alcohol or drug rehabilitation," dated July 25, 1984. *Id.* Albert's letter contained no factual assertions related to plaintiff's claim. *Id.*

After receiving this letter, Frederick met with Tom Crawford, Vice President of Human Resources and Services. In that meeting, Frederick expressed his opinion that the Benefit Plan's assessment of the claim had to be supported or they would "open the door" to a flood of claims for drug treatment; and that would create "bad precedent."

In all, Frederick considered the plan document, the "medical record," and the professional opinion of Benefit Plan Administrators. Frederick further testified that the plaintiff's appeal represented the only appeal ever made by an employee of a claim denial.

Tom Crawford testified that the policy of Boral Henderson is to use Benefit Plan Administrators as "experts on appeals." Crawford also stated that if treatment for alcoholism or psychiatric care could have been separated from drug-related treatment, charges for those types of care would be covered under the plan. Crawford admitted that he was "briefed" on the claim by Frederick, and that Frederick characterized the claim as a "drug case." Though the appeal denial was transmitted by Albert on Benefit Plan stationary, Crawford asserted that the decision had been made by himself, Mr. Frederick, and Mr. Cameron, Chief Executive Officer of Human Resources and Services. Crawford cited his friendship with the Slovers as a reason why his involvement should not be revealed, as if to cover the appearance of conflict of interest. At the time of the appeal, Crawford had never seen the file,

nor did he review it before giving his consent to the final denial.

The record of Sherri Slover's treatment began with the Admission Note of Brazos Hospital. Plaintiff's Exhibit No. 2. The Admission Note recites depression, her recent breakup and recent separation from a close friend. It also recites her drug abuse problem. *Id.* Progress Notes contained references to Sherri Slover's past drug use, over the previous six months, and treatment and response to it, including treatment for alcoholism. The Psychiatric and Physical Evaluation stated that Sherri Slover's drug abuse began in the summer, related to her estrangement from a boyfriend and separation from a friend. It recited occasional alcohol use as part of her history, summarizing the diagnosis as mixed substance abuse, including alcohol and underlying depression. The evaluation contained the following recommendation:

> Treatment plan will include helping the patient maintain sobriety. We will also focus on her low self-esteem and possible feelings of depression.

Defendant's Exhibit No. 10. The record of treatment also included a Discharge Summary. Defendant's Exhibit No. 11. The summary stated that Sherri Slover had been placed on an anti-depressant drug, to which she responded positively. Following discharge, she was continued on the anti-depressant as part of her outpatient treatment. In the Outpatient Discharge Summary, alcoholism treatment appeared to be a part of the continued outpatient care of Sherri Slover. Defendant's Exhibit No. 12. As to depression it stated:

> Toward the end of the outpatient stay, her depression resolved and her affect was good ...

*Id.* Sherri was discharged from the outpatient program with a continued prescription for an anti-depressant drug. *Id.*

Each of the above-recited facts, diagnoses and evaluations were available to the defendants at the time they evaluated plaintiff's claim for benefits under the Boral Henderson Clay Products Employee Benefit Plan. Under the currently prevailing standard of review of an ERISA benefit plan, described *infra*, these facts are relevant to the court's inquiry. On the basis of this evidence, it is found that Sherri Slover suffered from an alcohol abuse problem, and from psychological disorders within those eligible expense categories contained in the plan document.

## CONCLUSIONS OF LAW

This court has jurisdiction over the parties and the subject matter of this lawsuit pursuant to 29 U.S.C. § 1132(a) and 28 U.S.C. § 1331. The subject plan, Plan Document for Boral Henderson Clay Products, Inc., is an employee welfare benefit plan governed by ERISA.[1] The plaintiff qualified as a participant in the Boral Henderson plan document, under the meaning of 29 U.S.C. § 1002(7), when she became a full-time, permanent employee.

Plaintiff's cause of action is based on her claim that she was improperly denied health insurance benefits to cover expenses related to the treatment received by her daughter, Sherri Slover, at Brazos Psychiatric Hospital. Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan."

Boral Henderson Clay Products, Inc., is the fiduciary of its employee welfare benefit plan. ERISA defines a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority

---

1. 29 U.S.C. § 1002(1)(A). The statute provides in relevant part:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program

was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). Further, a fiduciary has "authority to control and manage the operation and administration of the plan," 29 U.S.C. § 1102(a)(1), and must provide a "full and fair" review of claim denials, 29 U.S.C. § 1133(2).

The Supreme Court recently ruled on the standard of review to be applied to benefits denial challenged under § 1132(a)(1)(B). In *Firestone Tire & Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Court held that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under an abuse of discretion standard if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.,* 109 S.Ct. at 956. Because the plan document of Boral Henderson Clay Products gives the company itself, as fiduciary, authority to determine eligibility for benefits and to decide appeals this court's review of claim denial must conform to an abuse of discretion standard.

In *Lowry v. Bankers Life and Casualty Retirement Plan,* 871 F.2d 522, 524–25 (5th Cir.1989), the Court of Appeals for the Fifth Circuit addressed the Supreme Court's holding in *Bruch.* The court declined to rule on whether the abuse of discretion standard, envisioned by *Bruch,* is equivalent to or less strict than the circuit's pre-existing arbitrary and capricious standard. *Id.* at 525. Lacking any directive *not* to apply the pre-existing standard, it will be applied in the present case.

■ Reviewing an administrative decision under the Court of Appeals arbitrary and capricious standard requires a two-step process: (1) determining the correct interpretation of a plan (focusing on evidence before the administrators when the determination was made) and (2) determining whether or not the administrators acted arbitrarily in light of the interpretation they gave to the plan. *Denton v. First National Bank of Waco, Texas,* 765 F.2d 1295, 1304 (5th Cir.1985). *See also, Dennard v. Richards Group, Inc.,* 681 F.2d

306, 314 (5th Cir.1982). Even if the administrator's interpretation appears incorrect, there is no violation of ERISA, unless that decision can be viewed as arbitrary or capricious. *Dennard,* 681 F.2d at 314.

■ Hence, the scope of judicial review of plaintiff's claim for benefits is limited to the question of whether the defendants were arbitrary and capricious in rejecting plaintiff's benefit claim. *Paris v. Profit Sharing Plan, Etc.,* 637 F.2d 357, 362 (5th Cir.1981) *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 99 (5th Cir.1979). According to the clear weight of authority, the actions of plan administrators must be sustained as a matter of law, unless plaintiff can prove such actions have been arbitrary or capricious. *Bayles,* 602 F.2d at 99.

The Court of Appeals has repeatedly applied the same factors in considering fiduciary action under the arbitrary and capricious standard. In *Bayles* the court set forth the following factors:

(1) uniformity in construction;
(2) "fair reading" and reasonableness of that reading; and
(3) unanticipated costs.

*Bayles,* 602 F.2d at 100. In a later case, the court added to this analysis three factors which it characterized as probative of the "good faith" of a trustee or administrator; these factors are:

(1) internal consistency of a Plan under the interpretation given by administrators or trustees;
(2) any relevant regulations formulated by appropriate administrative agencies; and
(3) factual background of the determination by a Plan and inferences of lack of good faith, if any. . . .

*Dennard,* 681 F.2d at 314; *see also Denton,* 765 F.2d at 1304. Dicta in *Lowry* adds definition to the court's inquiry into "good faith." The Court of Appeals remarked that the arbitrary and capricious standard may be a range, not a point, that the court's review of the trustee's decision is

"more penetrating, the greater is the suspicion of partiality, less penetrating, the smaller that suspicion is." *Lowry,* 871 F.2d at 525 n. 6. Specifically, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Bruch,* 109 S.Ct. at 956. The facts in *Bruch,* suggested that "every dollar saved by the administrator on behalf of his employer [was] ... a dollar in Firestone's pocket," which gave rise to a suggestion of conflict. *Bruch v. Firestone Tire and Rubber Co.,* 828 F.2d 134, 144 (3rd Cir.1987).

■ The first tier of inquiry, set forth in *Bayles,* has been characterized by the Court of Appeals as an inquiry into whether or not a "legally" correct meaning of a plan provision was arrived at by the fiduciary. *Dennard,* 681 F.2d at 314. Presumably, the reviewing court would uphold a plan interpretation that was uniform of construction, and represented a fair and reasonable reading, giving consideration to unanticipated costs. *Bayles,* 602 F.2d at 100. A general constraint on the court's review of fiduciary decisions is that the court must focus on the evidence that was before the plan committee when the final benefit determination was made. *Denton,* 765 F.2d at 1304.

■ The facts set forth above pertaining to the treatment of Sherri Slover and plaintiff's claim for benefits, represent facts that were made known to or were available to defendants at the time plaintiff's claim was denied. The denial itself was a two-step process. First, an initial determination of eligibility was made by defendant Benefit Plan Administrators. The appeal of that denial was sent directly to defendant Boral Henderson, which referred it to Benefit Plan, and finally the appeal was denied with the approval of Boral Henderson.

As an initial matter, defendant Boral Henderson, interpreted its plan to allow for the initial decision and appeal review to be done by defendant Benefit Plan Administrators. Looking at the procedure as a whole, that is, the initial review and the appeal, reveals that Boral Henderson had a long-standing policy of delegating significant authority to Benefit Plan Administrators. Meaningful review on appeal might satisfy the requirement of "fairness." This assumes, however, that the fiduciary has not totally abdicated authority to decide appeals. In this instance, a meaningful appeal process, that is, one which reasonably satisfied notions of fairness, would have provided the disgruntled claimant a review of Benefit Plan's initial finding of ineligibility. In actuality, the appeal process at Boral Henderson amounted to nothing more than rubber stamp of the plan supervisor's original determination. Notwithstanding this criticism, it is with specific reference to the facts of plaintiff's claim that the subject benefit determination is objectionable.

The first *Bayles* factor, that of uniformity, has little relevance in this case. Defendants testified that this was the first appeal that had been made during their tenure, and that they had gained no expertise or insight from earlier administrators. There is some basis for belief that the treatment plaintiff's claim received was *not* uniform. Mr. Frederick admitted a concern with setting a bad "precedent" with regard to drug-related appeals should Slover's claim be approved. To give the fiduciary the benefit of the doubt, the treatment given plaintiff may not have been "uniform," because this was the first appeal, and, perhaps, the first mixed substance abuse and psychiatric care case.

Of greater concern is the question of "fair reading" in the way plaintiff's claim was handled. The evidence before the plan supervisor established that there were allowable costs among those claimed. One inquiry into cost segregation by the plan supervisor, when rebuffed by Brazos Psychiatric Hospital, ended any attempt by either the supervisor or the fiduciary to reimburse allowable costs. The defendants could have inquired whether there was a primary cause of the treatment that might have rendered all charges allowable. Instead, the supervisor interpreted medical

records to suggest that *all* charges were drug-related.

The factual record available to the plan supervisor and to the plan fiduciary showed that treatment for depression, which, in significant part, was medication therapy, commenced at the hospital and continued afterward. Part of this treatment at least would have been covered.

As to the third *Bayles* factor, unanticipated cost, the circuit court has stated that fiduciaries may challenge significant, "unanticipated" claims against under a plan if, as a class, they would jeopardize the future of the plan. This concern may well be that voiced by the defendant fiduciary as a concern for "bad precedent." However, the segregation of explicitly allowable expenses from the exempt does not pose this manner of harm to the plan, for two reasons: they are not "unanticipated," and given the dearth of such claims or appeals in the past, they are not likely to jeopardize the plan.

Summarizing, the benefit denial decision, taken as a whole, reflected an interpretation of the plan document that was not a "fair reading," but that was arbitrary and capricious. Contributing to this arbitrariness was the superficiality of the appeal review granted by the plan fiduciary. When questioned on the claim, the fiduciary representatives could recite none of the details of the claim. Further, the singular concern of the fiduciary was the "bad precedent" potentially created by allowing drug-related charges. The fiduciary, very apparently, was confused about the nature of the plan supervisor's responsibility. Mr. Frederick testified that Benefit Plan was the "plan administrator," which clearly contradicts with the plan document itself. Mr. Crawford testified that Benefit Plan was used as the "expert on appeals," which also contravenes the express language of plan document. From all appearances, it was the plan supervisor and *not* the plan fiduciary who considered the claim initially, as well as on appeal. This occurrence, in itself, is a direct violation of the terms of the plan document, and represents an arbitrary and capricious abdication of authority by the fiduciary.

The first tier of the court's inquiry does not suffice to condemn the actions of the fiduciary without consideration of the second tier:

> The fact that a trustee's interpretation is not the correct one as determined by district court does not establish in itself arbitrary and capricious action, but is a factor in that determination.

*Dennard,* 681 F.2d at 314. The second tier addresses the question of the good faith of the administrator.

Two factors are relevant to this inquiry in the present case: first, the internal consistency of the plan under the interpretation given by the administrators, and, second, the factual background of this determination and any inferences of lack of good faith. *Denton,* 765 F.2d at 1304. The plan document is consistent to the degree that it sets forth clearly allowable and disallowable costs. Under the interpretation given it by the administrator, however, innumerable allowable expenses would be disallowed. That is, by disallowing mixed substance abuse charges, or allowable charges that are not, on their face, segregable from disallowed charges, the administrator is depriving its employees of reimbursement for reasonable expenses. Further, it is not reasonable to assume that merely because the treating hospital has a policy of combining charges that the fiduciary's inquiry has ended. It was not reasonable of the administrator to deny eligible charges because it had not developed a policy with regard to apportioning allowable costs. A fair and reasonable response would have been for the administrator to allot a portion of the charges to alcohol abuse and psychiatric treatment.

The factual background of this case set forth herein leads to the conclusion that the administrator lacked good faith with regard to its denial of plaintiff's claim. The fact that the plan is self-funded gives rise to an inference of conflict of interest in the present case. Further, the fiduciary's expressed fear of precedent-setting supports this inference. Defendants failed to rebut

evidence of conflict. Plaintiff's claim was not reviewed fairly and in light of her rights under the plan. Rather, plaintiff was treated as a nuisance, whose claim raised troubling questions about the need to modify the plan. A fair and reasonable response would have been to address the inadequacies of the plan directly, and to modify its terms in response, as allowed by the plan itself.

On the basis of this analysis under the appropriate standard, it is found that defendants acted arbitrarily and capriciously in denying plaintiff's claim in its entirety.

The question that remains is what amount would fairly recompense plaintiff for allowable expenses. Plaintiff has urged the court to find that depression was the underlying problem leading to both drug and alcohol abuse. This conclusion is not fully supported by the medical records. Neither is defendant's assertion that the underlying cause was drug addiction, fully supported by the evidence. Rather, three distinct problems led to hospitalization, of which two, *i.e.*, alcohol abuse and depression, were compensible under the plan. In keeping with these findings, plaintiffs' claim will be remanded to defendant, Boral Henderson Clay Products, the plan fiduciary, for determination of the allowable portion of the charges claimed. Remand has been held appropriate in those cases where proper evidence should have been considered by the administrator but was not. *Pierre v. Connecticut General Life Insurance Co.*, 866 F.2d 141, 144 (5th Cir.1989); *Offutt v. Prudential Insurance Co.*, 735 F.2d 948, 950 (5th Cir.1984). Defendants are directed to consider all of the findings of fact set forth herein, and in so doing, to arrive at an equitable allocation of allowable charges from among those claimed by plaintiffs. Accordingly, it is

ORDERED that plaintiff's claim for benefits under the plan document of defendant Boral Henderson Clay Products, Inc., shall be reconsidered by defendant Boral Henderson Clay Products, Inc., in keeping with the findings contained herein. Defendant Boral Henderson Clay Products, Inc., shall, within twenty days from the date of service of this memorandum opinion, determine and submit, for approval to the court, a sum which reflects allowable charges related to the alcohol abuse and drug dependency of plaintiff's dependent.