Robert D. JADER; and Saber Systems, Inc., Plaintiffs,

v.

PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, formerly known as The Bankers Life, Defendant.

Civ. No. 4–87–574.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 23, 1989.
Order for Judgment Dec. 12, 1989.

Richard Newgren, Bloomington, Minn., for plaintiffs.

Timothy E. Branson, Dorsey & Whitney, Minneapolis, Minn., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

DIANA E. MURPHY, District Judge.

The above-captioned matter came on for trial before the court on September 25, 1989. Plaintiff's remaining claim arises under the Employment Retirement Income Security Act (ERISA). 29 U.S.C. §§ 1001–1462.[1] Plaintiff seeks recovery for dental expenses that he claims were improperly denied under a medical insurance policy issued by defendant. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the court submits the following opinion as its findings of fact, conclusions of law, and order.

### I.

In 1985, plaintiff Robert D. Jader (Jader) was involved in a serious automobile accident. As a result of the accident, Jader suffered extensive damage to his jaw, teeth, and mouth.[2] At the time of Jader's accident, he was covered under a medical insurance policy issued by Principal.[3] Under the terms of the policy, Principal was obligated to cover Jader's accident-related dental expenses for six months from the date of the accident.[4]

After the initial medical healing process, Jader sought help for his dental problems from his family dentist, Dr. Babcock. The scope of the necessary dental work exceeded the expertise of Dr. Babcock, and he referred Jader to Dr. Ed Anderson, a prosthodontist specialist. Dr. Ed Anderson also could not assist Jader because of his extensive injuries and he referred Jader to Dr. Glen Anderson, a prosthodontist more experienced in major accident-related dental reconstruction.

The nature and extent of Jader's injuries made it apparent that the dental reconstruction treatment would exceed the six-month time limit of his insurance policy with Mutual. At Jader's request, Principal extended the time limit to file for benefit reimbursement to one year. In its letter agreeing to extend the time limit to one year, Principal also listed the current prevailing charge for several procedures that Jader needed. The reasonableness of Principal's prevailing charges was the main issue at trial.

Principal's medical policy defines prevailing charge as:

> The amount, as determined by [Principal], that most physicians or other health care providers charge for the same or a similar treatment or service in the cost area (or a comparable cost area) where the treatment or service is provided.

To determine the amount the company will allow as a prevailing charge for a given medical service, Principal utilizes a statistical compilation of comparable costs prepared by Health Insurance Association of America (HIAA). This compilation of data provides an analysis of medical procedures within a given geographic area and provides Principal with percentile breakdowns of costs for each service. To arrive at its current prevailing charge for a given service, Principal uses the 90th percentile figure multiplied by an inflation trend factor.[5]

In compiling the cost data for each medical service, neither Principal nor the HIAA differentiates between similar services performed by general practitioners and specialists. Accordingly, the cost data reflects statistical information on various services strictly by the type of service involved.[6]

In this case, Jader—through Dr. Glen Anderson—submitted claims for various re-

---

1. Plaintiff originally brought other related claims that were dismissed on defendant's motion for partial summary judgment. The claims of Saber Systems, Inc. were dismissed with prejudice pursuant to Fed.R.Civ.P. 12(c) because of the absence of standing. *See Memorandum Opinion and Order dated January 3, 1989, 702 F.Supp. 224 (D.Minn.1989).*

2. Jader's upper jaw was broken, and multiple teeth were damaged. Initially, an oral surgeon temporarily wired Jader's jaw.

3. The parties agree that the medical policy is governed by ERISA.

4. The policy did not cover general dental work, but only dental work required as the result of an accident. There is no dispute that the costs

incurred by Jader resulted from his automobile accident.

5. The 90th percentile figure is the figure that is equal to or higher than 90% of the reported costs figures. The inflation trend factor corrects the figures to reflect current inflation changes.

6. To categorize various dental services, HIAA and Principal utilize a modified version of the American Dental Association's (ADA) Code on Dental Procedures and Nomenclature (Code). Both parties conceded that this code does not encompass all services that are actually performed. As such, Principal must occasionally attempt to "pigeonhole" some services into a Code category.

constructive dental work.[7] The bills submitted to Principal did not contain ADA codes, but instead provided descriptions of the work performed. Principal attempted to categorize the services into one of the ADA codes to arrive at a prevailing charge. The trial evidence showed that all of Dr. Glen Anderson's services as described could have fit into more than one ADA code category.[8]

After analyzing Jader's claim, Principal determined that the total charges submitted by Dr. Glen Anderson exceeded its prevailing charge. In accordance with general company policy, Principal interpreted the phrase "same or similar treatment" under the policy to mean the same service performed by all health-care providers in the Minneapolis–St. Paul area.[9]

When Principal initially denied the payment of the charges submitted, Jader requested a review of the decision. Principal informed Jader that he should have Dr. Glen Anderson submit documentation to the company explaining why the higher charges were appropriate. Dr. Anderson responded with a brief letter to Principal explaining that the charges were higher than normal because of the extensive nature of Jader's injuries. Jader also informed Principal that he had twice been referred by other dentists because of the extent of his injuries and the special nature of the dental work required. The evidence demonstrated that Principal also made some effort via the telephone to determine the scope of the dental work with Jader and Dr. Anderson. At trial the parties vigorously contested the actual level of inquiry that Principal undertook to obtain information regarding Jader's condition.

At trial, Dr. Glen Anderson testified, in some detail, about the specific work he performed to reconstruct Jader's dental work. Dr. Anderson stated that Jader's dental work required special care because of the serious broken jaw and multiple broken teeth. He also explained that much

of the extra cost was incurred because of the need to realign Jader's teeth after the broken jaw healed. Dr. Anderson provided an example of the distinctive bridge work that he designed and produced for Jader. The evidence showed that x-rays taken of Jader's jaw were available to the company.

Without a formal review, Principal again denied the excess charges and reimbursed Jader for only $5,760 of the total charges of $11,964.[10] The total disputed amount at trial was $4,337. Of this amount, $4119 is for charges rejected by Principal as exceeding the prevailing charge allowed and $218 is for costs subsequently incurred by Jader. The $218 costs, however, have not been submitted by Jader to Principal for payment and the one-year time limit of the policy as amended by Principal has expired.[11]

## II.

Before considering the factual disputes it is necessary to determine the proper standard of review to apply to Principal's decision to reject part of Jader's claim for reimbursement. Both parties vigorously argued the standard of review at trial.

■ The Supreme Court recently articulated a *de novo* standard of review for denial of benefits actions under 29 U.S.C. § 1132 except where the benefit plan gives the administrator or fiduciary[12] discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, — U.S. —, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).[13]

■ The threshold issue, therefore, is whether the fiduciary has discretionary authority to construe uncertain terms under the plan. *Lakey v. Remington Arms Co.*, 874 F.2d 541, 544 (8th Cir.1989) (interpreting *Bruch*). If a plan gives discretionary authority to the fiduciary, the actions taken are to be reviewed under an "arbitrary and capricious" standard. *Id.* at 544. The courts of appeal are beginning to consider

---

7. The total charges submitted by Jader totalled $11,964.00. Principal paid Jader $5,760.00

8. The various categories for each service, however, varied little in the resulting prevailing charge applicable.

9. There was no dispute between the parties that Minneapolis–St. Paul was the proper cost area.

10. There are several charges included in the $11,964 that Jader agrees were for services not covered by insurance.

11. The parties agree that the remaining $4119 claim was submitted in a timely fashion with the term of the policy.

12. The parties agree that Principal is the fiduciary under the medical insurance coverage plan.

13. The *de novo* standard applies regardless of whether the plan is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. *Bruch,* 109 S.Ct. at 956.

how explicit the language of the plan must be in order to constitute discretionary authority under *Bruch.* *See Baxter v. Lynn,* 886 F.2d 182, 187 (8th Cir. 1989) (collecting cases).

In this case, nothing in the plan gives Principal the express general authority to determine benefit eligibility or general term construction. Instead, the policy authorizes Principal to determine the amount of the "prevailing charge." Principal contends that an arbitrary and capricious standard should apply to its denial of partial benefits actions. Jader argues for a *de novo* standard because of the conflict inherent in a situation where the insurance company that decides also directly benefits from a claim denial.

■ *Bruch* rejected a bright-line test regarding conflicts of interest, and instead opted to view conflict of interest as a "factor[ ] in determining whether there is an abuse of discretion." 109 S.Ct. at 956 (quoting Restatement (Second) of Trusts § 187, Comment I (1959)). Although the discretion given to Principal in this case is limited to construing one provision, it is that provision which is at issue. Moreover, the Eighth Circuit has recently construed the language in *Bruch* broadly. *See Lakey,* 874 F.2d at 544–45. The court finds that the proper standard of review to be applied is an arbitrary and capricious standard.

### III.

■ The arbitrary and capricious standard involves determining whether the fiduciary's decision is supported by substantial evidence. *Niagara Paper Corp. v. Paper Indus. Union Management Pension Fund,* 800 F.2d 742, 745–46 (8th Cir.1986). Decisions made in bad faith or contrary to the law also can be arbitrary and capricious. *Short v. Cent. States S.E. & S.W. Areas Pension Fund,* 729 F.2d 567, 571 (8th Cir.1984). The court does not conduct a *de novo* factual hearing, but instead focuses on the evidence that the fiduciary had available at the time of the decision. *Id.* at 571–72; *see also Phillips v. Kennedy,* 542 F.2d 52, 54 (8th Cir.1976). The arbitrary and capricious standard is not necessarily a rigid standard when a conflict of interest arises, but may be "more penetrating, the greater is the suspicion of partiality, less penetrating, the smaller the suspicion is." *Lowry v. Bankers Life and*

*Casualty Retirement Plan,* 871 F.2d 522, 525 n. 6 (5th Cir.1989).

■ Under ERISA, 29 U.S.C. § 1133, Principal was required to give Jader "adequate notice in writing" which sets forth "specific reasons for the denial" and to "afford a reasonable opportunity" for "full and fair review by the appropriate named fiduciary". The record does not show that Principal afforded Jader these procedural rights under ERISA.

Although Principal did notify Jader of the claim denial, its letter stated nothing more than the conclusion that its original determination was correct. This type of statement is insufficient under section 1133. *See Wolfe v. J.C. Penney Co.,* 710 F.2d 388, 391–92 (7th Cir.1983); *see also* 29 C.F.R. section 2560.503–1(f). Where evidence is adduced that suggests compliance with section 1133 would have helped resolve the dispute on the merits, the fiduciary ought to specify with some detail the type of information needed and how the applicant should present it to the company. *Id.* at 393; *see also Teeter v. Supplemental Pension Plan of Consol. Rail Corp.,* 705 F.Supp. 1089 (E.D.Pa.1989).

The failure to follow section 1133 is more troubling where the company stands to benefit directly from a denial of benefits. *See Bruch,* 109 S.Ct. at 956; *Lowry,* 871 F.2d at 525 n. 6. Principal's denial of ERISA's section 1133 procedural rights is inconsistent with the law under ERISA. *Wolfe,* 710 F.2d at 393.[14]

■ There is also a question of whether Principal acted in an arbitrary, capricious, or bad faith manner when it determined the prevailing charges for Jader's dental work. At the heart of the dispute is what constitutes "same or similar treatment" under the policy. Since the plan language is somewhat ambiguous, the focus of review involves whether Principal's interpretation was unreasonable under the circumstances.

In *Slover v. Boral Henderson Clay Prod., Inc.,* 714 F.Supp. 825, 827 (E.D.Texas 1989), a similar case, a plan fiduciary rejected a claim for benefits because the plan prohibited payments for "drug rehabilitation" or "narcotism." The fiduciary refused payment where the evidence indicated that the covered patient was admitted to treatment for drug, alcohol and depression related therapy and the hospital refused to specify the diagnosis or separate

---

**14.** Other courts have determined this failure to follow section 1133 violates due process. *See,*

*e.g., Teeter,* 705 F.Supp. at 1095.

the charges, but generally acknowledged the "cross-over" nature of the patient's addiction. *Id.* at 828–29. Based on this lack of information and the concern over setting "bad precedent," the fiduciary denied the claim after an appeal under the plan. *Id.* at 832.[15]

Upon review, the district court reversed after finding that the fiduciary's decision was arbitrary and capricious. *Id.* at 834. A major factor in the court's reversal was the lack of effort on the part of the fiduciary to obtain sufficient information after the hospital did not initially respond with satisfactory evidence. *Id.* at 832–32 ... The court noted that "it was not reasonable ... to deny charges because [the company] had not developed a policy [to cover this problem]." *Id.* at 833. Moreover, the court found that the fiduciary had a conflict of interest which may have motivated its denial of the claim. *Id.* at 833–34.

Likewise, in this case, the evidence available to Principal showed that Jader's dental problems were neither normal or routine. Principal knew that Jader had twice been referred out—once by a prosthodontist specialist—because of the severe extent of his injuries. This evidence, along with x-rays which showed the extensive damage to Jader's jaw, was available to Principal at the time of its decision. In addition, both Jader and Dr. Glen Anderson wrote Principal letters stating that the charges were higher because of the special work required to repair the substantial damage.

Principal's only effort to gather necessary information involved telephone conversations with Jader and Dr. Anderson who both repeatedly informed Principal of the serious extent of Jader's injuries which necessitated more complex dental repair. Under these circumstances, Principal should have inquired further into the nature and extent of Jader's injuries and the special dental work required to correct them. *See Teeter v. Supplemental Pension Plan of Consol. Rail Corp.*, 705 F.Supp. 1089, 1095 (E.D.Pa.1989) (fiduciary has an affirmative responsibility to gather information that bears on the claim and is reasonably available. Failure to discharge that duty constitutes reversible error).

In addition to Principal's lack of diligence with regard to its discussions with Jader and Dr. Anderson, Principal made a limited in-house effort to determine the propriety of Jader's claims. At trial, Dr. McNamee, Principal's dental consultant, stated that the company does not have an on-going relationship with a prosthodontist specialist and no effort was made to consult with one about the Jader case. Instead, Principal merely inquired into whether the charges as submitted exceeded the prevailing charge. Of course, the method that Principal used made this inquiry a foregone conclusion because routine dental work and specialist dental work cannot be compared. McNamee admitted as much at trial when he agreed that if there were extensive jaw problems—as alleged by Jader and Dr. Anderson—the prevailing charges as calculated by the company would understate the actual charges required to adequately repair the damage.

This evidence, together with Principal's failure fully to investigate Jader's claim and to follow ERISA procedural requirements and the strong conflict of interest present when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claim, supports reversal under the arbitrary and capricious standard. If Principal had considered all the evidence available to it, and more fully investigated Jader's claim—which could have been accomplished under the ERISA review process—the result regarding the appropriate prevailing charges should have been different.

■ When a fiduciary fails to follow procedural steps or fails to consider the evidence available to it, the proper course is to remand the matter to the plan fiduciary for reconsideration. *Wolfe*, 710 F.2d at 394; *Slover*, 714 F.Supp. at 834; *Teeter*, 705 F.Supp. at 1096. Jader's claim should therefore be remanded to Principal for reconsideration in accordance with this order.[16]

Jader's claim for subsequent benefits in the amount of $218 was properly denied by Principal. Jader produced no evidence that

---

15. ERISA requires a specific notification and appeal process under 29 U.S.C. § 1133. Although not raised by the parties, there is no evidence that the medical plan provided any notification or appeal rights to Jader.

16. In *Slover v. Boral Henderson,* the court also remanded to the fiduciary for further review.

It ordered the fiduciary to reconsider the claim, determine within 20 days an amount that would adequately compensate the policy holder and submit the determination to the court for entry of judgment. This appears to be an appropriate procedure here also.

any claim form was ever submitted to the company. Moreover, these expenses occurred after the expiration of the one-year time limit as agreed to by Principal.

## ORDER

Accordingly, based upon the above, and all the files, records, and proceedings, IT IS HEREBY ORDERED that:

1. Defendant's denial of dental benefits totalling $4,119 to Robert D. Jader is reversed. The matter is remanded to defendant for reconsideration in accordance with this opinion;

2. Defendant's denial of dental benefits totalling $218 that accrued outside the one-year time limit is affirmed;

3. Defendant shall, within thirty days of the date of this order, determine the amount which reflects the total of the reasonable prevailing charges for Jader's dental work, and inform the court and opposing counsel of that determination so judgment may be entered for an appropriate amount.

4. Plaintiff shall submit his claim for attorneys fees under ERISA after entry of judgment in compliance with local rule 6.

## ORDER FOR JUDGMENT

The above-captioned matter came on for trial before the court on September 25, 1989, on plaintiff's remaining claim which arose under the Employment Retirement Income Security Act. 29 U.S.C. §§ 1001–1461.[1] Plaintiff sought recovery for dental expenses that he claimed were improperly denied under a medical insurance policy issued by defendant.

On October 23, 1989, the court issued its findings of fact, conclusions of law and order pursuant to Fed.R.Civ.P. 52, reversing the decision of defendant and remanding for a redetermination of benefits within 30 days. *Jader v. Principal Mut. Life Ins. Co.*, 723 F.Supp. 1338 (D.Minn.1989). Defendant then reconsidered its benefit decision and submitted a redetermination in accordance with the court's opinion. After defendant's redetermination both parties submitted additional letter briefs to the court.

In reviewing defendant's redetermination the court must determine whether evidence supports the defendant's decision. *See Lawrence v. Westerhaus*, 780 F.2d 1321, 1322–23 (8th Cir.1985). If there is evidence to support the defendant's redetermination, the decision is not arbitrary and capricious. *Id.*

Defendant reconsidered plaintiff's claim in light of the evidence produced at trial and determined that the seriousness of plaintiff's injury did warrant additional benefit allowances. This conclusion was reached after further investigation by its consultant Dr. McNamee who recommended an added payment to plaintiff of $1440. The record reflects sufficient evidence to support defendant's redetermination of benefits under the policy.

## ORDER

Accordingly, based upon the above, and all the files, records, and proceedings, IT IS HEREBY ORDERED that:

1. Final judgment be entered against defendant and in favor of plaintiff in the amount of $1440, together with plaintiff's costs.

2. Plaintiff shall submit his claim for attorneys fees with supporting documentation and affidavits in compliance with D.Minn.Loc.R. 6.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

1. Plaintiff originally brought other related claims that were dismissed on defendant's motion for partial summary judgment. The claims of Saber Systems, Inc. were dismissed with prejudice pursuant to Fed.R.Civ.P. 12(c) because of the absence of standing. *See* Memorandum Opinion and Order dated January 3, 1989, 702 F.Supp. 224 (D.Minn.1989).