**STORMONT–VAIL REGIONAL MEDICAL CENTER, Plaintiff,**

v.

**KANSAS BUILDING TRADES OPEN–END HEALTH AND WELFARE FUND UNINSURED BENEFIT PLAN, Defendant.**

No. 88–4146–S.

United States District Court, D. Kansas.

May 10, 1991.

Charles R. Hay, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for plaintiff.

Elaine M. Eppright, Blake & Uhlig, Kansas City, Kan., William A. Larson, Gehrt and Roberts, Chartered, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on renewed cross-motions for summary judgment. In this action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, plaintiff hospital seeks reimbursement from defendant employee benefit plan for $157,439.67 in medical services rendered from November 12, 1986, to his discharge from the hospital on April 6, 1987, of an extremely prematurely born baby named

Micah Bieker, a dependent of a participant in the employee benefit plan.

*Previous Rulings*

The court finds that a brief review and summary of events in this case to date may be helpful in crystallizing the issues presently before the court. On previously submitted cross-motions for summary judgment, Judge O'Connor of this District in a January 8, 1990–filed Memorandum and Order[1] reached a number of holdings, including: (1) plaintiff, as an assignee of Micah Bieker's father, Dale Bieker, a participant in defendant employee benefit plan, has standing to assert Dale Bieker's claims; Memorandum & Order at 6; (2) plaintiff effectively exhausted its remedies; *Id.* at 8; (3) plaintiff's common law claims for breach of contract, unjust enrichment, estoppel, and waiver are preempted by ERISA; *Id.* at 9; (4) the decision of defendant trustees to deny payment under the employee benefit plan is reviewable under the "arbitrary and capricious" standard; *Id.* at 10; (5) the trustees' failure to consider all of the evidence, including the medical evidence, before issuing the decision to deny benefits in Micah Bieker's case rendered that decision "arbitrary and capricious;" *Id.* at 12; and (6) plaintiff's claim for reimbursement should be remanded to defendant plan trustees to consider additional evidence and determine whether plaintiff was entitled to plan benefits. *Id.* at 13–14. Accordingly, both parties' summary judgment motions were denied. *Id.* at 14.

*Trustees' Decision on Remand Denying Benefits*

In a letter to plaintiff's counsel dated September 14, 1990, the trustees of defendant plan stated that plaintiff's claim for benefits under the plan was again denied. In reaching the decision to deny benefits, the letter stated that the trustees "have carefully reviewed the entire record.... consist[ing] of all depositions taken, Micah Bieker's medical records and all pleadings and briefs filed by counsel." Plaintiff's

---

1. *Stormont–Vail Regional Medical Center v. Kansas Bldg. Trades Open–End Health & Welfare Fund Uninsured Benefit Plan,* No. 88–4146– 0, slip op., 1990 WL 11377 (D.Kan., *unpublished,* January 8, 1990).

Renewed Summary Judgment Motion Exhibit B (hereinafter, "Plaintiff's Exh. B") at 1. In presenting the trustees' reasons for denying benefits, the letter cited three provisions of the benefit plan:

Routine newborn benefits are payable as part of the mother's claim for necessary and reasonable expenses incurred not to exceed $600 for hospital charges.

The plan also defined a "covered child" as: "[e]ach unmarried dependent child by birth or adoption over 15 days and under 19 years of age who is wholly dependent upon the Eligible Employee for maintenance and support, and is claimed as a full dependent on the Eligible Employee's Federal Income Tax Return.

If a dependent is hospital confined or disabled on account of injury or sickness when his benefits would otherwise take effect, they shall take effect on the date the disability ends.

Plaintiff's Exh. B at 2.

The letter also quoted deposition testimony from Micah Bieker's physicians, namely Dr. Crouch and Dr. Sidlinger, concerning Micah Bieker's condition during his hospitalization; specifically, the doctors were asked whether they considered Micah Bieker "sick" at the time of his extremely premature birth and thereafter. Plaintiff's Exh. B. at 2–4. The letter then stated:

7. The Trustees have concluded that, pursuant to the Plan sections quoted herein and in light of both Dr. Crouch's and Dr. Sidlinger's testimony, no more than its routine newborn benefits were payable for Micah Bieker until after he was discharged from Stormont–Vail on April 6, 1987. The Trustees find that the child was sick, needing continuous treatment in order to sustain his life until the hospital released him to go home on April 6, 1987.

Plaintiff's Exh. B at 4–5 (emphasis added).

The September 14, 1990 letter denying plaintiff's claim for additional plan benefits then discussed the plan provision allowing for payment of additional benefits in "hardship" cases as follows:

8. With respect to the routine newborn benefits, the Trustees have also determined that they correctly acted to increase that amount from $600.00 to the $5,000.00 ultimately paid. This determination rests on their review of these facts:

(a) in hardship cases, the Plan allows the Trustees the latitude to decide to pay more money than would otherwise be payable, if to do so would help the participant but not jeopardize the Plan;

(b) the Trustees recognized that to only pay $600 of this child's medical expenses would result in a great financial hardship to his parents; and, in an effort to minimize this hardship, the Trustees, through W.L. Parker, former Plan Manager and House Counsel, offered to pay Stormont–Vail $.20 on the dollar or $31,487.93 in full satisfaction of the total $157,439.67 bill;

(c) When the $.20 on the dollar offer was rejected, the Trustees increased the $600 newborn benefit to $5,000.00 and issued this amount to Stormont–Vail.

Plaintiff's Exh. B at 5 (note omitted).

The letter concluded as follows:

It is the Trustees' position that they have issued all payable Plan benefits. In their opinion, they have acted reasonably, as the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001, *et seq.*, requires. In 1985 they acted to conserve the Plan for the benefit of all participants by determining that newborn care would be covered only at $600.00. In 1987 they increased that amount to $5,000.00 after their efforts to resolve this case with Stormont–Vail on a hardship basis failed.

The Trustees continue to recognize the hardship nature of this case as well as the fact that Stormont–Vail saved Micah Bieker's life. But, they also continue to recognize that this Plan cannot afford to pay for that lifesaving treatment in excess of its Plan benefits.

Plaintiff's Exh. B at 6, § III.

*Renewed Summary Judgment Motions*

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact ex-

ists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of material fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing an absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

In their present motions, plaintiff and defendant essentially rely upon the factual statements contained in their previously-filed summary judgment motions, most of which are of little relevance given the present posture of the case. The basic facts are summarized in the January 8, 1990 Memorandum and Order as follows:

> Dale Bieker was a participant of the Kansas Building Trades Open-end Health and Welfare Fund Uninsured Benefit Plan ("plan") on November [11], 1986, the birthday of his son, Micah Bieker. Micah was born prematurely in Manhattan, Kansas, and was transferred to Stormont–Vail Regional Medical Center. He was hospitalized from November 12, 1986, to April 6, 1987, because of his premature birth. Stormont–Vail thereafter submitted a claim to the Kansas Building Trades Benefit Plan for $157,439.67.

> William L. Parker, the plan manager and house counsel of the defendant benefit plan, responded that the Bieker's bill would not be paid because "newborn children are not covered until they are 15 days old." The plan's board of trustees did not consider hospital records or medical evidence before determining the Biekers' ineligibility. Even though both the Biekers and the plaintiff failed to exercise their rights under the plan's appeal procedure, the board made several offers to the Bieker family. First, the Biekers were offered $600. Subsequently, the trustees increased maximum newborn benefits to $5,000. The board's final offer was $0.20 on the dollar. The board kept minutes as "brief as possible" of the board meetings in which various proposals were discussed in order to avoid prejudicing negotiations. The trustees' proposals were rejected and Stormont–Vail filed its complaint.

Memorandum and Order at 2–3.

Some additional facts are also pertinent to the parties' present motions. Other claims on Micah Bieker, subsequent to the one in question, have been paid when submitted by Stormont–Vail, although the subsequent hospitalizations were also related to his extreme prematurity. Since this suit was filed, defendant amended its plan further to provide that: "Neo natal babies and other sick babies are subject to this maximum until such time as they are determined to be normal for their age." There is also a split of medical opinion as to whether Micah Bieker's extreme prematurity is to be regarded as injury or sickness. The affidavit of Dr. Sidlinger, who treated Micah Bieker during his stay in Stormont–Vail, indicates that Dr. Sidlinger did not consider the condition of extreme prematurity as constituting "injury or sickness;" Dr. Crouch's deposition indicates that he considered Micah Bieker to be "sick" during his initial hospitalization at Stormont–Vail. Dr. Crouch Depos. at 51.

 In its renewed motion for summary judgment, plaintiff asks the court to recon-

sider the January 8, 1990 Memorandum and Order's finding that the "arbitrary and capricious" standard of review applies in this case. Plaintiff contends that *de novo* review is appropriate for several reasons, including that the plan language concerning the trustees' authority in this case does not contain the same language granting discretionary authority as that approved by the United States Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), and by other courts in other cases. Plaintiff also argues that the circumstances of this case make *de novo* review appropriate for several reasons, including that the trustees allegedly have failed to properly exercise their power to determine eligibility in Micah Bieker's case, including the issuance of a "written decision," but rather have simply "rubber stamped" their counsel's decision to deny benefits. Plaintiff also contends that the trustees are subject to a conflict of interest because "each member of the Board of Trustees either represents a participating employer or a participating union with a direct financial stake in this matter." Plaintiff's Memorandum in Support of Renewed Summary Judgment Motion at 5.

The court finds that it should not reconsider Judge O'Connor's decision of January 8, 1990 regarding the appropriate standard of review. First, the court finds that, under the law of the case doctrine, the standard of review issue should not be relitigated or reconsidered unless it is "clearly erroneous or unless some manifest injustice has been imposed." *Renfro v. City of Emporia*, 732 F.Supp. 1116, 1117 (D.Kan. 1990). In this case, the court cannot find the previous holding that the arbitrary and capricious standard applies to have been in error. The plan language in question not only grants the trustees the power to amend the plan, but also states that "[a]ny interpretation of the plan provisions rests with the Board of Trustees." The court construes this as a sufficient grant of discretionary authority to make arbitrary and capricious, rather than *de novo* review appropriate. The court also cannot find that the court's previous decision to apply this standard of review imposes a "manifest injustice" in this case. Thus, the court finds that plaintiff's arguments in this regard are without merit.

■ In interpreting this standard of review, this court previously stated: "[i]f the authority to determine eligibility or construe terms is within the discretion of the administrator, the administrator's determination of eligibility 'must be considered final unless (1) arbitrary or capricious, (2) not supported by substantial evidence, or (3) erroneous on a question of law.'" Memorandum & Order, at 9–10 (citing *Peckham v. Board of Trustees*, 653 F.2d 424, 426 (10th Cir.1981)). *See also Pratt v. Petroleum Prod. Mgt., Inc. Employee Sav. Plan & Trust*, 920 F.2d 651, 657 (10th Cir.1990).

As a matter of clarification, the court finds that the availability of benefits under the first two clauses of the plan language quoted in the September 14, 1990 letter are not, and should not be, disputed. These two clauses respectively limit the "routine" newborn benefits to $600 (which defendant agreed to pay) and to persons who have been dependents more than 15 days (which plaintiff concedes would allow no coverage for the first 15 days of Micah Bieker's life).[2] The court also finds that, notwithstanding the brevity of the plan standards with respect to dealing with "hardship" cases such as this one admittedly is, the court cannot find arbitrary and capricious the trustees' decision to increase benefits

---

**2.** Also for the sake of clarifying the scope of the issues remaining in this case, the court notes that it must reject plaintiff's argument that K.S.A. 40–2,102 mandates coverage in this case, given the broad scope given ERISA preemption under 29 U.S.C. § 1144. *See FMC Corp. v. Holliday*, — U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

In addition, the court will not be addressing the constitutional arguments raised by plaintiff because these issues have not been fully briefed by the parties and thus are not, in the court's view, properly before the court for decision. More importantly, however, the court also finds that discussion of plaintiff's constitutional arguments is not necessary given the court's decision here.

from $600 to $5000 rather than paying Stormont–Vail's entire $157,439.67 bill. Thus, the court finds that plaintiff's arguments in this regard are without merit.

Both parties however agree that the central issue in this case concerns the trustees' interpretation of the third clause of the plan language. Specifically, the question before the court is whether the trustees' decision denying benefits because Micah Bieker was "sick" (which they interpreted simply as "in need of treatment") during his initial hospitalization was arbitrary and capricious.

The court finds that the trustees' decision, based upon the third clause of the plan, as stated in the September 14, 1990 letter denying additional benefits, is arbitrary and capricious because the trustees' interpretation of the plan language is inconsistent, ignoring certain language in the plan and creating "surplusage" in the plan language. The critical clause in question states:

> If a dependent is hospital confined or disabled on account of injury or sickness when his benefits would otherwise take effect they shall take effect on the date the disability ends.

In the court's view, the trustee's decision in this case omits certain language and rewrites the clause to state:

> If a dependent is hospital confined when his benefits would otherwise take effect they shall take effect on the date the dependent is discharged from the hospital.

The trustee's interpretation that "sickness" means simply, "in need of treatment," ignores the "on account of injury or sickness" language as stated in the plan. The trustee's interpretation also ignores the plan language stating that the benefits shall begin on the date such disability (referring back to the "disability" which initially led to the hospitalization) ends. Even under the restrictive arbitrary and capricious standard of review, trustees may not ignore plan language or employ interpretations inconsistent with the plan language. *See Pratt*, 920 F.2d at 662.

Even assuming, *arguendo*, the reasonableness of the trustee's conclusion that benefits would not be payable for a specific "sickness" on account of which Micah Bieker was hospital confined or "disabled" on November 26, 1986 (the date he became eligible for dependent benefits), plaintiff has presented evidence that Micah Bieker experienced different illnesses at different points in his hospitalization and, near the end of his hospital stay, he no longer suffered from the same "sickness" as he did initially, but rather was simply too small to be released from the hospital. *See* Dr. Sidlinger Depos. at 46–47; 48. Further, the inconsistency (and thus, arbitrariness and capriciousness) of the trustees' interpretation of the plan language in this instance is also demonstrated by the undisputed fact that the plan has paid for subsequent treatment received by Micah Bieker, treatment which is related to his extremely premature birth. Thus, if the condition of extreme prematurity itself constitutes a "sickness," as the trustees found in denying additional benefits, it is a disability which has not yet ended in Micah Bieker's case. *See Slover v. Boral Henderson Clay Prod., Inc.*, 714 F.Supp. 825, 831–34 (E.D.Tex.1989) (citing inconsistency in plan interpretation as relevant in determining whether a decision should be found to be arbitrary and capricious).

Thus, given the plan language during the time period in which plaintiff's claim for payment arose, a reasonable interpretation by the trustees would probably not deny benefits for the entire period but rather would have to apportion the entire hospitalization based upon medical evidence concerning the specific "sicknesses" (defined more precisely than "in need of treatment") suffered by Micah Bieker on November 26, 1986 (which arguably would not be covered by virtue of the plan language) and, if these "sicknesses" ended, subsequently developed "sicknesses" (which arguably would be covered under the plan language as it existed at that time). Given that plaintiff and defendant have to this point focussed their respective attention and arguments on legal rather than fact-based grounds, and have fo-

cussed on achieving total victory, the court is not now in a position, based upon the parties' briefs, to resolve the relevant factual issues regarding Micah Bieker's medical condition and to apportion plaintiff's bill as appears to be required by the plan language in effect at the time. Thus, the parties' cross-motions for summary judgment will be denied and this case, which has been recently set on the court's trial docket, shall proceed to trial.[3]

IT IS BY THE COURT THEREFORE ORDERED that defendant's renewed motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's renewed motion for summary judgment is also denied.

Richard E. JONES, Plaintiff,

v.

The CITY OF TOPEKA, a municipal corporation; Douglas S. Wright, individually and in his official capacity as Mayor of the City of Topeka, Kansas; Ronald S. Miller, individually and in his official capacity as Chief Administrative Officer of the City of Topeka, Kansas; and Harry L. Felker, III, individually and in his official capacity as Mayor of the City of Topeka, Kansas, Defendants.

Civ. A. No. 89–4175–S.

United States District Court,
D. Kansas.

May 17, 1991.

---

3. The court notes that this case may be a proper one for a settlement conference. If the parties desire such a conference, they should so notify the court within 5 days of the date of this order and the court would then refer this matter, pursuant to D.Kan. 214, to United States Magistrate Judge Ronald C. Newman in Topeka, Kansas for the purpose of holding a settlement conference.

Richard E. Jones, Topeka, Kan., Gregory B. King, Kansas City, Kan., for plaintiff.

Thomas E. Wright, Davis, Wright, Unrein, Hummer & McCallister, Topeka, Kan., for defendants.

MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motion for partial summary judgment in this civil rights action brought by plaintiff following his termination from employment as an Assistant City Attorney in August 1988. In a motion accompanying his memorandum in opposition to defendants' partial summary judgment motion, plaintiff also seeks partial summary judgment; defendants have moved to strike plaintiff's summary judgment motion on grounds that it is untimely. In this action, plaintiff alleges that defendants' conduct in terminating plaintiff initially in August 1988 and, after plaintiff successfully arbitrated his initial termination, in removing plaintiff from the payroll again in August 1989, violated his rights to due process, equal protection and free speech; plaintiff also asserts several state common law claims. Because the court finds that oral argument would not be of material assistance in resolving the issues raised in the parties' motions, defendants' request for oral argument will be denied. D.Kan. 206(d).

*Defendants' Motion to Strike; Plaintiff's Summary Judgment Motion*

█ As an initial matter, defendants move to strike plaintiff's motion for partial summary judgment, filed January 12, 1991. In support of their motion to strike, defendants contend that plaintiff's request is untimely, given that the scheduling order entered in this case on October 24, 1989 states a June 6, 1990 deadline for the filing of dispositive motions. Alternatively, defendants contend that the request should be stricken because plaintiff has argued issues beyond those raised in defendants' partial summary judgment motion. Rule 12(f) of the Federal Rules of Civil Procedure allows the court to order stricken **"from any pleading** any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added). It has been held that a Rule 12(f) motion may not be directed at motions.

*Krass v. Thomson–CGR Medical Corp.,* 665 F.Supp. 844, 847 (N.D.Cal.1987). Rather, under the Federal Rules, motions to strike are properly directed at "pleadings" as enumerated in Rule 7(a) of the Federal Rules of Civil Procedure, including:

> a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served.

*See Stands Over Bull v. Bureau of Indian Affairs,* 442 F.Supp. 360, 368 (D.Mont.1977) (affidavits were not "pleadings" subject to a motion to strike within the literal terms of Federal Rules). Thus, the court finds that defendants' motion to strike plaintiff's motion for partial summary judgment should be denied.

█ Notwithstanding the court's conclusion that it should not "strike" plaintiff's motion for partial summary judgment, the court still must determine whether plaintiff's motion is properly before the court for consideration. Plaintiff's motion was filed at least 6 months beyond the June 6, 1990 deadline established in the scheduling order in this case and no requests for either extension of time or for permission to file the motion out of time were filed with the court. Given that the death of plaintiff's former counsel apparently occurred before the June 6, 1990 dispositive motion deadline, *see* doc. 31 (stating that the death occurred between June 6, 1990 and July 18, 1990), plaintiff's former counsel's death does not explain plaintiff's failure to file his motion before the June 6, 1990 date. The court finds that plaintiff has not established that his failure to file a timely motion or seek extension of time constitutes "excusable neglect" under Rule 6(b) of the Federal Rules of Civil Procedure. Thus, because plaintiff's motion is not properly before the court, plaintiff's motion for entry of partial summary judgment will be denied.[1]

---

**1.** Given the court's disposition of plaintiff's par- tial summary judgment motion, the court does

**1426** 

*Defendants' Motion for Partial Summary Judgment*

 Litigation. Defendant Douglas S. Wright (hereinafter, "Mayor Wright"), served as Mayor of the City of Topeka from April 1983 through April 11, 1989. Defendant Ronald S. Miller served as Chief Administrative Officer for the City of Topeka from September 1985 through October 1988.

Pursuant to Charter Ordinance No. 65, which had been approved by City of Topeka voters in the fall of 1984 and became effective April 1985, Topeka's form of city government was changed to reflect a strong mayor-council form of city government. Pursuant to Charter Ordinance No. 65, among the powers and duties of the Mayor are to:

> Appoint, promote, transfer, assign and demote, discipline, layoff, suspend, discharge, or remove all appointive officers and employees of the City except as otherwise provided by applicable Kansas Statutes. All such appointive officers and employees shall be subject to demotion, layoff, suspension, discharge and removal without cause, except as otherwise provided in any negotiated memorandum of agreement, any applicable civil service regulation, or the administrative code and the personnel code.

Charter Ordinance No. 65 art. II, § 2.4.A.10. Pursuant to the charter ordinance, Mayor Wright stated that he believed that he had the authority to fire, without cause, any employee (including the plaintiff), who was not covered by a negotiated memorandum of agreement or an employment contract. Plaintiff contends that Mayor Wright's authority under the charter ordinance did not extend to him, but rather only to cabinet-level appointments, citing the opinion of Edward Johnson, who drafted the ordinance.

On May 27, 1987, the City of Topeka and the Heritage Development Company entered into a real estate purchase agreement (hereinafter referred to as the "Kenney Contract"), whereby the City agreed to sell and Heritage agreed to buy the property known as 503 Kansas Avenue. The Ken-

---

not find it necessary to accede to defendants' request for additional time to respond to plaintiff's motion. Thus, notwithstanding the court's

denial of defendants' motion to strike, defendants' request for an additional 30 days response time is denied.